### GREGORY M. FIELD *v.* LOUIS S. GOLDBERG, COMMISSIONER OF MOTOR VEHICLES*

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. 702004
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed December 19, 1991

*Gregory M. Field,* pro se, the plaintiff.

*Kathryn A. Mobley,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the defendants.

MALONEY, J. The plaintiff appeals the decision of the defendant commissioner of motor vehicles (commissioner) suspending his motor vehicle operator's license for ninety days pursuant to General Statutes § 14-227b. The appeal is brought pursuant to General Statutes § 4-183. The court rules in favor of the plaintiff.

---

\* An appeal to the Appellate Court was filed on January 13, 1992. The appeal was withdrawn as of July 27, 1992.

The police arrested the plaintiff on February 18, 1991, on the charge of operating a motor vehicle under the influence of alcohol in violation of General Statutes § 14-227a. At that time, the plaintiff submitted to two chemical (intoximeter) tests, which indicated that his blood alcohol level exceeded the per se limit of 0.10 percent. Pursuant to § 14-227b (c), the police, acting on behalf of the commissioner, suspended the plaintiff's license. The plaintiff thereafter requested a hearing in accordance with § 14-227b (d), (f) and (g). Section 14-227b (f) provides in relevant part as follows: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor . . . (2) was such person placed under arrest; (3) . . . did such person submit to test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle." If, after the hearing, the hearing officer finds any one of these issues in the negative, the commissioner must reinstate the license. In the present case, the hearing officer found all of the issues in the affirmative and affirmed the suspension of the plaintiff's license.

The court finds that the commissioner's decision adversely affected a specific personal and legal interest of the plaintiff, his right to operate a motor vehicle, and concludes, therefore, that he is aggrieved by that decision within the meaning of General Statutes § 4-183 (a).

The essential facts of the present case, as revealed by the record, are undisputed. Although the police officer who stopped and arrested the plaintiff did not testify at the hearing, his report was admitted into

evidence. The report states, "I was told by a motorist that the above vehicle was zig zagging all over the road and I spotted the vehicle and I stopped it." In another section, the report states that the informant described the vehicle as a "red hearse." The report goes on to relate that the officer smelled alcohol on the plaintiff's breath after he stopped him and that the plaintiff failed the usual field sobriety tests. He was then placed under arrest.

Subsequent to the commissioner's decision on the license suspension but prior to oral argument to the court on this appeal, the plaintiff appeared before the court at geographical area number 16 on the criminal charge of violating General Statutes § 14-227a. That court, *Shaughnessy, J.*, granted the plaintiff's motion to suppress all evidence obtained incidental to the arrest. The basis of the court's decision was that the investigatory stop by the police violated the plaintiff's rights under the fourth and fourteenth amendments to the United States constitution.

In his brief and oral argument to the court on this appeal, the plaintiff advances three principal arguments as the bases of his appeal. First, he contends that the police lacked sufficient cause or reason to stop him prior to arresting him and, therefore, the commissioner's findings and conclusions on the issues of probable cause and arrest were erroneous. Second, he claims that the evidence obtained by the police after he was stopped does not support the commissioner's finding of probable cause for the arrest. Third, in the alternative, he argues that Judge Shaughnessy's decision in the criminal case is conclusive on the issues of probable cause and lawful arrest in this administrative appeal under the doctrines of res judicata and collateral estoppel.

The report of the arresting officer, which was admitted into evidence at the administrative hearing, is the only evidence in the record concerning the circumstances under which the police initially stopped the plaintiff. As previously indicated, the report states that the police officer received a tip from an anonymous source who said he saw a vehicle described as a "red hearse" zigzagging "all over the road." There was no indication as to when or where the informant saw the vehicle, nor does the report indicate who was driving the vehicle when it was allegedly zigzagging or even give a description of the driver. There is no indication that the police officer observed the vehicle zigzagging or otherwise being operated abnormally. There are no other facts reported that indicate that the police observed any criminal or even suspicious behavior on the part of the plaintiff.

An investigatory stop, such as the police performed in the present case, is a seizure within the meaning of the federal and Connecticut constitutions. *State* v. *Scully,* 195 Conn. 668, 674, 490 A.2d 984 (1985). Where the initial stop of a motor vehicle is illegal, evidence obtained as a result of that stop may be suppressed in a criminal proceeding. Id., 673–74; see *State* v. *Aillon,* 202 Conn. 385, 402, 521 A.2d 555 (1987). A police officer need not have probable cause, however, to stop a motor vehicle. *State* v. *Lamme,* 216 Conn. 172, 184, 185, 579 A.2d 484 (1990). Relying on *Terry* v. *Ohio,* 392 U.S. 1, 20–28, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and subsequent United States Supreme Court cases, the Connecticut Supreme Court in *State* v. *Lamme,* supra, 184, held that a brief investigatory detention is proper, even in the absence of probable cause, if the police have a "reasonable and articulable suspicion that a person has committed or is about to commit a crime." "What constitutes a reasonable and articulable suspicion depends on the totality of the cir-

cumstances." *State* v. *Anderson,* 24 Conn. App. 438, 441, 589 A.2d 372, cert. denied, 219 Conn. 903, 593 A.2d 130 (1991). An anonymous informant's tip can give rise to a reasonable and articulable suspicion when the police are able to corroborate the details of the tip. Id., 443.

In the present case, the commissioner's decision does not indicate whether the hearing officer made any findings or conclusions concerning the legality of the initial stop of the plaintiff by the police. The hearing officer did find that there was probable cause for the plaintiff's arrest, but the record clearly shows that all of the facts relied on in support of that finding were developed by the police after they stopped the plaintiff. The court has carefully examined the whole record and concludes that the police did not have the requisite legal basis for stopping the plaintiff prior to arresting him.

In the present case, the anonymous tip contained nothing to identify the plaintiff, no allegation of a specific crime, and no information as to the time or place of observation by the informant. Although the tip described the vehicle that the plaintiff was driving when stopped, that was the only detail that the police could corroborate. Significantly, the police observed neither any abnormal operation as reported by the informant nor any other suspicious behavior. In this regard, the report merely states that "I spotted the motor vehicle on Federal St. the vehicle headed East on New Britain Ave. and I stopped the motor vehicle."

Analysis of the relevant case law supports the court's conclusion that the police were not authorized to make the initial investigative stop of the plaintiff under the circumstances of the present case. In *State* v. *Scully,* supra, 674, the court emphasized that an investigative stop must be based on "some objective manifestation

that the person stopped *is*, or *is about to be*, engaged in criminal activity" and "[b]ased upon the whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Emphasis in original; internal quotation marks omitted.) "The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances . . . [which, second,] must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." (Internal quotation marks omitted.) Id., 675. In the present case, the "whole picture" that the police had consisted of the informant's tip of erratic driving coupled with their own brief observation of the vehicle being operated normally. Clearly this whole picture did not amount to an "objective manifestation" that the person they saw driving the vehicle was then, or was about to be, engaged in erratic driving or in other wrongdoing. As previously indicated, the police report does not indicate where the informant saw the vehicle or how much time had elapsed before he notified the police. The tip did not describe the driver. The information the police had, therefore, did not even provide "a particularized and objective basis for suspecting the particular person" (the plaintiff) of driving the vehicle erratically at some time prior to their observation.

Other cases have enlarged the rule in *Scully* to accommodate special or more urgent circumstances and to cover tips concerning completed crimes. In *United States* v. *McClinnhan,* 660 F.2d 500 (D.C. Cir. 1981), the police had an anonymous tip that the suspect, who was described in detail, was carrying a sawed off shotgun in a black briefcase. When they saw him, however, he was simply standing on the sidewalk, doing noth-

ing to arouse suspicion. Nevertheless, the District of Columbia Court of Appeals held that there was sufficient basis for a legitimate *Terry* stop and frisk, including a search of the briefcase. The basis of the court's opinion was that the police had no alternative to stopping and searching the suspect because the tip alleged a concealed weapon, no other reasonable investigative action would have been effective, and "the Fourth Amendment does not, particularly where the reported contraband is a weapon as lethal as a sawed-off shotgun, require a police officer to ignore his well-founded doubts . . . ." Id., 503. Similarly, in *State v. Anderson,* supra, 445, where the tip was that a vehicle was being driven by a person whose license was under suspension, the court held that "[t]he state has a compelling interest in ensuring that only qualified drivers operate vehicles on public roads . . . [and the] only immediate way to determine the identity of the driver and whether he possessed a valid license was to stop the truck." In the present case, however, the nature of the alleged "crime," zigzagging on the road, did not require an investigative stop to confirm the tip. Indeed, a more effective investigative procedure, and a less intrusive one, would have been to observe the operation of the vehicle for a longer period of time to see if the essence of the tip could be corroborated.

In *State v. Mitchell,* 204 Conn. 187, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987), the court held that the constitutional test of the legality of an investigative stop "balances the nature of the intrusion upon personal security against the importance of the governmental interest inducing the intrusion." Id., 196, citing *United States v. Hensley,* 469 U.S. 221, 228, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). In *Mitchell,* the court upheld the stop and detention of the defendants on the basis of a description of them and their vehicle by the victim of a sexual

assault. The court observed that there is a "strong law enforcement interest . . . in the context of felonies or violent crimes, because 'it is in the public interest that the crime be solved and the suspect detained as promptly as possible.' " Id., quoting *United States* v. *Hensley,* supra, 229. In the present case, by contrast, the informant's tip does not even clearly indicate that a crime or motor vehicle violation was committed. The investigative stop that the police performed, however, was a seizure and, therefore, clearly an intrusion. Under these circumstances, the police action failed the balancing test of *State* v. *Mitchell,* supra.

At the administrative hearing, the plaintiff objected to the admission of the police officer's report, but the objection was based on technical arguments of little merit. The plaintiff did not object to the admission of the report on the basis that the evidence it contained was obtained as the result of an illegal stop. The hearing officer properly overruled the objection that the plaintiff did make. The hearing officer was entitled, therefore, to rely on the statements in the report in reaching his findings and conclusions. *Volck* v. *Muzio,* 204 Conn. 507, 518, 529 A.2d 177 (1987). The report relates that after he stopped the plaintiff, the officer detected an odor of alcohol on the plaintiff's breath and that, in the officer's opinion, the plaintiff failed the six "Field Performance (Sobriety) Tests." These facts were sufficient to support a finding of probable cause to arrest the plaintiff on the charge of operating under the influence of alcohol. *State* v. *Torres,* 182 Conn. 176, 189, 438 A.2d 46 (1980). Also, the hearing officer was entitled to give those facts greater weight than he gave to the plaintiff's testimony in which he claimed he failed the field test as a result of a physical ailment. *Lawrence* v. *Kozlowski,* 171 Conn. 705, 707–708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

The court's conclusion with respect to the poststop evidence, however, is not dispositive of the case. The plaintiff has consistently raised claims that his constitutional rights were violated as a result of the illegal stop prior to the arrest. He raised these claims at the administrative hearing and in his brief and oral argument to this court. He specifically attacks the commissioner's finding of probable cause as the illegitimate result of the stop. Accordingly, the court must address the question of whether an illegal stop by the police requires reversal of the commissioner's suspension of an individual's license under General Statutes § 14-227b even where the poststop evidence provided probable cause for his arrest. The court answers that question in the affirmative.

The general statutory scheme of Connecticut's "per se" drunk driving laws makes it illegal for a person to operate a motor vehicle "while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight." General Statutes § 14-227a (a). In addition to criminal penalties, the commissioner is required to suspend for ninety days the motor vehicle operator's license of anyone who is found to have been operating a vehicle while his blood alcohol level exceeded the statutory limit. Violation of the statutes is not dependent upon the actual manner in which the person operated the vehicle or whether the person was "under the influence" of alcohol while operating the vehicle. The statutes are violated solely as a result of the blood alcohol level of the operator, the so-called "per se" violation. Nevertheless, at the administrative hearing on an individual's license suspension, the commissioner is required under § 14-227b (f) to make findings on two issues that have no bearing on the per se violation. These are: "(1) Did the police officer have probable cause to arrest the person . . . for operating a motor vehicle while under the influence of

intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; [and] (2) was such person placed under arrest . . . ."

An axiomatic rule of statutory construction is that statutes "should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." *84 Century Ltd. Partnership* v. *Board of Tax Review,* 207 Conn. 250, 263, 541 A.2d 478 (1988). The obvious purpose of the legislature in including the probable cause and arrest requirements in the administrative procedure on license suspensions was to ensure that that procedure would be subject to minimum basic constitutional safeguards. The legislative history of the administrative hearing statute, General Statutes § 14-227b (f), supports this interpretation. In 1981, the license suspension procedure was removed from the judicial system and transferred to the department of motor vehicles, which was charged with the responsibility of providing a hearing and determining whether a license should be suspended for violation of the per se law. See Public Acts 1981, No. 81-446; *Volck* v. *Muzio,* supra, 515. In introducing and explaining Public Acts 1981, No. 81-446 to the senate, Senator Clifton A. Leonhardt remarked as follows: "Some people have raised the question does this Bill go too far? Is it a little too stringent? And I would like to go through some of the protections that are built into the Bill. First of all, no one can be asked to be given this test unless they have been arrested for probable cause for driving under the influence so there has to be some independent source of the arrest; erratic driving, speeding and then the smelling of the breath and that sort of thing. The police officer has to have independent probable cause for administering the test . . . and

then very importantly, the Bill makes provision for an immediate post suspension hearing, in line 275 so that the Constitutional due process rights of drivers are protected." 24 S. Proc., Pt. 18, 1981 Sess., pp. 5672–73. Later, speaking in support of the act, Senator Howard J. Owens, Jr., responded to a question concerning constitutional safeguards as follows: "Now, Senator Skowronski points out the fact that the tests or the safeguards for probable cause are not that great, but when I worked on this Bill with Senator Leonhardt, and when I worked on it in the Committee, one of the things, one of the alternatives that was given to us was that the police officer should have a right to stop anyone and give them a test and one of the things that I felt that was very important was that the probable cause be built in. For instance, before a test could be administered, that the probable cause had in fact, to be established first . . . . And I can say that I don't think that the police officers will act arbitrarily and I think that that probable cause test that was put in there will make certain that before the test was given, that they have someone and that the test will be used merely to buttress what has already been shown to the police officer when he makes this arrest or in fact, the probable cause is established." Id., p. 5685.

As the previous excerpts from the legislative proceedings make clear, the legislature intended that the license suspension procedure be subject to basic constitutional safeguards, including the requirement of lawful conduct on the part of the police officers who stop, arrest and test individuals suspected of violating the per se law. This legislative purpose would be severely undermined, if not destroyed, if the police in such cases were not required to follow the rules in making investigative stops that the courts have imposed under the constitution. Put another way, if the administrative proceedings were not subject to these constitu-

tional restraints, the police would be free to make unjustified and unlawful random stops of vehicles, which could then provide a basis for the state to deprive citizens of their licenses administratively even if it could not prosecute them for criminal violations. As has been frequently observed, the administrative penalty is potentially more severe than the results of a criminal prosecution. This court holds, therefore, that the probable cause requirement in § 14-227b (f) encompasses the requirement that an initial investigative stop of the driver of a vehicle be lawful. Since the court has found that the evidence in the record does not support such a conclusion in the present case, it follows that the commissioner's finding of probable cause was erroneous. For that reason, the plaintiff's appeal must be sustained.

The principles just discussed cause the court further to conclude that the requirement in § 14-227b (f) that the person be found to have been "placed under arrest" must be interpreted to mean *lawful* arrest.[1] An unlawful stop of a suspect by the police invalidates his subsequent arrest. *State* v. *Scully,* supra, 674–78. Although no Connecticut case concerning the arrest requirement in the license suspension statute has been brought to the attention of this court, the courts of other jurisdictions have interpreted similar statutes to mean that the arrest must be lawful.

In interpreting the Illinois statute, which provides that the person must have been "placed under arrest,"

---

[1] The plaintiff neither explicitly raised this issue at the administrative hearing, nor on appeal did he attack the commissioner's finding that he had been "placed under arrest." In fact, at the hearing below, his attorney conceded that the plaintiff had been arrested. The entire thrust of the plaintiff's contentions concerning the conduct of the police, however, is that his arrest was based on an illegal stop and was, therefore, not a lawful arrest. The court considers the issue of the legality of the plaintiff's arrest to be implicitly included in his objections at the administrative hearing and in his appeal here.

the court in *People* v. *Krueger,* 208 Ill. App. 3d 897, 904, 567 N.E.2d 717 (1991), cert. denied, 503 U.S. 919, 112 S. Ct. 1293, 117 L. Ed. 2d 516 (1992), decided: "We hold that the arrest required by the first paragraph must be a lawful and valid arrest. We believe that this construction is consistent with our duty to ascertain and give effect to the intent of the legislature and to avoid, if possible, a construction which would raise doubts regarding the constitutionality and validity of the statute." Also, "[t]o hold that motorists waive their right to be free of unconstitutional arrests and searches as a condition of operating motor vehicles would do violence to the principle of implied consent. . . . Third, even barring constitutional problems, we are unwilling to conclude that the legislature intended to authorize the suspension of drivers' licenses based on the fruits of illegal arrests. The requirements of an arrest and reasonable cause are for the purpose of protecting the motorist against unlawful searches and seizures." Id., 905–906. Finally, the court in *People* v. *Krueger,* supra, 907, noted that its holding was in "accord with the decisions of a great majority of the courts that have construed implied-consent statutes that do not explicitly require a lawful arrest. *Bath* v. *Heckers* (Colo. App. 1974), 522 P.2d 108; *State* v. *Brunner* (1973), 211 Kan. 596, 507 P.2d 233; see *Gallagher* v. *Michigan Secretary of State* (1975), 59 Mich. App. 269, 229 N.W.2d 410; *Colling* v. *Hjelle* (N.D. 1963), 125 N.W.2d 453; *State* v. *Mulcahy* (1985), 202 N.J. Super. 398, 495 A.2d 166, aff'd in part, rev'd in part on other grounds (1987), 107 N.J. 467, 527 A.2d 368; *White* v. *Oklahoma Department of Public Safety* (Okla. 1980), 606 P.2d 1131; *State* v. *Wetherell* (1973), 82 Wash. 2d 865, 514 P.2d 1069, see also *In re Gardner* (1979), 39 N.C. App. 567, 251 S.E.2d 723 (suspension may be based on illegal but constitutionally valid arrest). Contra *Commonwealth of Pennsylvania, Department of Transportation* v. *Wysocki* (1987), 517 Pa. 175, 535 A.2d 77."

Similarly, in *Gallagher* v. *Secretary of State,* 59 Mich. App. 269, 275–76, 229 N.W.2d 410 (1975), the Michigan Court of Appeals held that a valid arrest is an absolute condition precedent under the Michigan "implied consent" statute to the right of a law enforcement officer to request a person to submit to chemical tests of his blood, breath, urine or other bodily substances or suffer the penalty for such refusal, stating: "We are acutely aware of what is at stake in this question of statutory construction. We have not the slightest inclination to dilute in the most minute degree the public purpose of apprehending and convicting intoxicated or impaired drivers. No less are we inclined to give a statute an unconstitutional interpretation and render nugatory all the good that was the legislative purpose in passing the act.

"We cannot conceive that the Legislature had the remotest intention by its wording of subsection 2, to mean that law enforcement officers can on what they alone consider 'reasonable grounds' without any judicial restraint, supervision, or requirement of prior valid arrest, request a citizen to take a chemical test of bodily substances or suffer the grave penalty of license loss or suspension on refusal to comply.

"Hence we hold that the sine qua non to energize the statutory mandate of the 'implied consent' law is a prior valid arrest.

"Since the arrest in this case was invalid so was the request to submit to the test or suffer the consequences of refusal. To this extent and to this extent alone do we uphold the injunction against further proceedings emanating from the alleged drunken driving by appellee."

In *Holland* v. *Parker,* 354 F. Sup. 196, 199 (D.S.D. 1973),[2] in declaring the South Dakota implied consent

---

[2] The plaintiff in *Volck* v. *Muzio,* 204 Conn. 507, 529 A.2d 177 (1987), cited *Holland* v. *Parker,* 354 F. Sup. 196 (D.S.D. 1973), in support of his

law unconstitutional for failure to require a lawful arrest prior to a request for submission to blood-alcohol analysis, the United States District Court commented: "The language of the South Dakota statute provides for neither an emergency circumstance nor a lawful arrest, nor has it been interpreted to contain such.

"Thus, it would seem that if a police officer, implementing search and seizure procedures in accordance with constitutional proscriptions, cannot require a person to take a blood test without a warrant unless there is a lawful arrest and emergency circumstances, then neither could the officer demand that a licensee submit to the blood test, without these same constitutional prerequisites, when refusal would result in automatic loss of his license. If it were any other way, the Fourth Amendment protections would be rendered valueless since asserting them would result in a penalty potentially more severe than conviction for the alleged public offense."

Further, in *State* v. *Mulcahy,* 202 N.J. Super. 398, 407–408, 495 A.2d 166 (1985), rev'd in part on other grounds, 107 N.J. 467, 527 A.2d 368 (1987), which involved an appeal of a conviction pursuant to N.J. Stat. Ann. § 39:4-50.4a (West), a statute making it a crime to refuse to submit to an alcohol test, the court held: "One of the critical elements of the offense proscribed by [N.J. Stat. Ann. § 39:4-50.4a] is that defendant was arrested for a violation of [N.J. Stat. Ann. § 39:4-50]. Implicit in the clear and unambiguous mandate that the municipal court 'shall determine . . . whether the person

argument that noncompliance with the requirements of subsections (b) and (c) of General Statutes § 14-227b defeats the jurisdiction of the commissioner to order his license to be suspended. The Connecticut Supreme Court did not sustain Volck's claims and stated in a footnote that *Holland* v. *Parker,* supra, did not involve a provision similar to § 14-227b (d) restricting the issues at the license suspension hearing to those prescribed. *Volck* v. *Muzio,* supra, 517 n.6.

was placed under arrest' is the requirement that the arrest be valid and lawful. Anything less would violate fundamental principles of due process and procedural fairness. We cannot conceive that our Legislature in requiring the municipal court to make the specific determination that there be an 'arrest' intended that the arrest be anything but a valid and lawful arrest. This conclusion is supported by other courts which have held that a valid and lawful arrest is a condition precedent to the right of a police officer to request a driver to submit to testing for alcohol or other proscribed substances or suffer the penalty for such refusal. See *Gallagher* v. *Michigan Sec. of State,* 59 Mich. App. 269, 229 N.W.2d 410, 413–14 (Ct. App. 1975); *Holland* v. *Parker,* 354 F. Supp. 196, 199 (D.S.D. 1973); *Smestad* v. *Ellingson,* 191 N.W.2d 799, 801 (N.D. Sup. Ct. 1971); *Colling* v. *Hjelle,* 125 N.W.2d 453, 456–57 (N.D. Sup. Ct. 1964); *Schutt* v. *MacDuff,* 205 Misc. 43, 127 N.Y.S.2d 116, 127 (Sup. Ct. 1954). Cf. *State* v. *Wetherell,* 82 Wash. 2d 865, 514 P.2d 1069, 1073 (Sup. Ct. 1973). But see *Glass* v. *Commonwealth, Dept. of Transp., Bur. of T.S.,* 460 Pa. 362, 333 A.2d 768, 770–71 (1975)."

On the basis of the foregoing analysis, this court holds that the requirement in the Connecticut statute that the person be "placed under arrest" means that the arrest must be valid and lawful. Thus, at a license suspension hearing, the hearing officer must find that the arrest was valid and lawful in determining whether the person was "placed under arrest." Since the court has found that the evidence in the record reveals that the investigatory stop by the police in the present case was unlawful, it follows that the commissioner's finding that the plaintiff was "placed under arrest" was erroneous. For that reason, the plaintiff's appeal must be sustained.

The plaintiff claims that because the trial court granted his motion to suppress in the parallel criminal proceedings against him on grounds that the investigatory stop of the plaintiff's vehicle was improper, the present appeal should be sustained. Specifically, the plaintiff states that under the doctrines of res judicata and collateral estoppel, the trial court's decision in that case "controls the outcome of this case." The plaintiff argues that the decision of Judge Shaughnessy "should be considered conclusive as to the lack of probable cause."

Without commenting on the general applicability of the doctrines of res judicata and collateral estoppel to a civil license suspension proceeding where the prior action is a criminal proceeding, however, it is clear that these doctrines do not apply under the circumstances of the present case. On appeal from a license suspension proceeding, the court does not find facts but reviews the record to determine whether the facts found by the hearing officer are supported by evidence in the record. This court does not function as a fact finder on appeal and, thus, this appeal does not involve a relitigation of a fact or issue determined in the criminal proceedings. Furthermore, the hearing officer made his findings, including the finding that there was probable cause to arrest, *before* the trial court issued its decision on the motion to suppress in the criminal case. Thus, at the time the hearing officer issued his decision, there was no prior determination of the relevant issues by the criminal court. The doctrines of res judicata and collateral estoppel, therefore, are inapplicable to the present case.

As previously indicated, the court finds that the administrative findings on the issues of probable cause and arrest, as provided in § 14-227b (f), were in violation of the plaintiff's rights under the fourth and fourteenth amendments to the United States constitution.

These findings prejudiced substantial rights of the plaintiff in that they resulted in the suspension of his driver's license. In accordance with the provisions of § 4-183 (j), therefore, the plaintiff's appeal is sustained.