[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff William Langton appeals the decision of the defendant commissioner of motor vehicles suspending his motor vehicle operator's license. The commissioner acted pursuant to General Statutes § 14-227b on the basis that the plaintiff refused to consent to a chemical test of the alcohol content of his blood after being arrested on a charge of driving while under the influence of alcohol. The plaintiff appeals pursuant to § 4-183. The court finds the issues in favor of the plaintiff.
The department of motor vehicles held a hearing on the suspension at the plaintiff's request. The plaintiff appeared, represented by counsel, and testified. The hearing officer admitted in evidence, over objection by the plaintiff, the written report of State Trooper Marlon Drummond on the motor vehicle department A 44 form, along with a supplementary narrative, and Drummond's accident report on a separate form. Drummond did not appear at the hearing, and there was no other evidence admitted in the record.
Drummond's reports state that he arrived at the scene of an accident on Route I-84 in Hartford. He found the plaintiff seated in the rear seat of a city of CT Page 1124 Hartford police cruiser, in the custody of Officer Ezequiel Laurenano of the Hartford Police Department. Drummond states that Laurenano told him that Laurenano "observed the accused walking away from the accident scene and was forced to run in order to catch up to and detain the accused. Officer Laurenano stated the accused offered no resistance when he realized that Officer Laurenano was a Police Officer."
The plaintiff testified at the hearing that Officer Laurenano grabbed him in the front, held him and handcuffed him, and then walked him to the police cruiser. The officer placed the plaintiff in the back seat of the cruiser, where there were no door handles. He was still in handcuffs. About ten minutes later, the plaintiff testified, Trooper Drummond arrived.
Drummond's report picks up the narrative at that point. He states that he approached the Hartford police cruiser and became suspicious because of the plaintiff's slurred speech, glassy and bloodshot eyes and an odor of alcohol. The plaintiff became "argumentative." Based on these perceptions, Drummond arrested the plaintiff, charging him with operating under the influence.
The plaintiff subsequently submitted to one breath test at state police headquarters, but allegedly refused to submit to the required second test.
At the hearing, the plaintiff's attorney objected to the introduction of Drummond's reports on the basis that he was not the officer who arrested the plaintiff, claiming instead that it was Laureanano [Laurenano] who arrested him. In this regard, counsel contended that General Statutes § 14-227b(c) provides that the report that is submitted to the motor vehicle department for use at the hearing must be the report of the arresting officer.
The plaintiff's attorney also raised the argument that Laurenano's detention of the plaintiff was constitutionally excessive and that it amounted to an arrest without probable cause.
On appeal, the plaintiff presses the same issues. The court agrees that there was insufficient evidence to CT Page 1125 support a finding by the hearing officer that the police legally arrested the plaintiff.
General Statutes § 14-227b(f) requires that the hearing officer make certain determinations as grounds for suspension of an individual's license. Among these are a determination that the police had probable cause to arrest the individual for operating under the influence and a determination that the police did arrest the individual. In Field v. Goldberg, 42 Conn. Sup. 306
(1991), this court held that an illegal stop of an individual by the police requires reversal of the commissioner's suspension of his license under § 14-227b
even where post-stop evidence provided probable cause for his arrest. The court concluded that the probable cause requirement in § 14-227b(f) encompassed also the requirement that the preliminary investigative stop of the individual be lawful. As a second ground for reversing the commissioner in such cases, the court concluded that the requirement that the hearing officer find that the police had arrested the individual included the requirement that such arrest was a lawful arrest. In this regard, the court noted that an illegal stop invalidates a subsequent arrest, citing State v. Scully,195 Conn. 668, 674-678 (1985).
In State v. Oquendo, 223 Conn. 635 (1992), our Supreme Court summarized the rules governing investigative stops by the police under the federal and state constitutions. The court held
 Article first, 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. In determining whether the detention was justified in a given case, a court must consider if based upon the whole picture the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. A court reviewing the legality of a stop must therefore examine the specific information CT Page 1126 available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. These standards, which mirror those set forth by the United States Supreme Court in Terry v. Ohio, supra, with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, 7 and 9 of our state constitution.
Id., 654. (Citations and internal quotation marks omitted.)
In State v. Mitchell, 204 Conn. 187 (1987), the court discussed the permissible extent of the detention of a suspect by the police after a valid Terry/Oquendo
stop. The court held
 A Terry stop that is justified at its inception can become constitutionally infirm if it lasts longer or becomes more intrusive than necessary to complete the investigation for which that stop was made. Like the determination of initial justification, this inquiry is fact-bound. The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances.
In the present case, the only evidence at the administrative hearing concerning the initial stop of the plaintiff by the police indicated that Officer Laurenano stopped him as he was walking away from the scene of an accident and that he offered no resistance. Nevertheless, the officer handcuffed the plaintiff and held him in the police cruiser for ten minutes, until Trooper Drummond arrived at the scene and began questioning him. There is no evidence as to the nature of the suspicions, if any, that caused Laurenano essentially to imprison the CT Page 1127 plaintiff; indeed, it is impossible to determine why the officer thought it necessary to forcibly detain the plaintiff at all. Conceivably, the officer suspected that the plaintiff was committing the offense of evading responsibility for an accident causing damage to property, in violation of General Statutes § 14-224(b). But the only evidence in the record, Drummond's report of Laurenano's statement, does not go that far. Rather, that statement indicates that the plaintiff immediately ceased leaving the scene when he recognized the police officer, which would have tended to dispel, not arouse, any such suspicions. Clearly, there is nothing in the record before the hearing officer that would justify the police enlarging the scope of their investigatory stop to the extent that Officer Laurenano did.
In summary, the evidence that the hearing officer had in this case does not support a finding that Officer Laurenano was justified in detaining the plaintiff prior to the arrival of Trooper Drummond. That being so, Laurenano's action constituted an illegal seizure, Statev. Oquendo, supra, 223 Conn. 657; and may not be the basis of a finding that the plaintiff was lawfully arrested within the meaning of General Statutes § 14-227b(f).
The plaintiff's appeal is sustained.
MALONEY, J.