[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 13, 1997
Plaintiff Eric Schenfield appeals the decision of the defendant commissioner of motor vehicles suspending the plaintiff's motor vehicle operator's license. The commissioner acted pursuant to General Statutes § 14-227b on the basis that the plaintiff refused to submit to a chemical test of the alcohol content of his blood after having been arrested on a charge of driving while under the influence of alcohol. The plaintiff appeals pursuant to § 4-183. The court finds the issues in favor of the plaintiff
The sole basis of the plaintiff's appeal in this case is his contention that the police officer who ultimately arrested him on the drunk driving charge did not have a legal basis for stopping him while he was operating his vehicle.
The facts essential to the court's decision are not in dispute and are fully reflected in the record. The police officer's report, which is in the record, states that Officer Dean of the Naugatuck police department received a report from the police dispatcher that an anonymous caller observed and was following a vehicle on New Haven Road in Naugatuck. The caller told the dispatcher, who relayed it to Officer Dean, that the driver "had been swerving into (the opposite) lane." The caller provided the license plate number of the vehicle. As the vehicle driven by the plaintiff, bearing that license plate, passed Dean's patrol car, the caller, who was still following, relayed CT Page 6203 through the dispatcher that it was the suspect vehicle.
Upon receiving that last report, Officer Dean immediately drew up behind the plaintiff's vehicle and stopped him, using his overhead lights. The officer did not himself observe any erratic driving or any other suspicious or abnormal behavior on the part of the plaintiff. Rather, his statement indicates that he stopped the plaintiff based only on the anonymous report of erratic driving received through the dispatcher.
A police officer need not have probable cause to stop a motor vehicle. A brief investigatory stop is proper even in the absence of probable cause if the police have a "reasonable and articulable suspicion that a person has committed or is about to commit a crime." State v. Lamme, 216 Conn. 172, 184 (190), relying on Terry v. Ohio, 392 U.S. 1 (1968). Furthermore, such suspicion can arise from the observation of actions that are themselves innocent in nature. The "fact that a police officer may not have observed a violation before making an investigative stop is irrelevant because a reasonable and articulable suspicion can arise from conduct that alone is not criminal." (Citations and internal quotation marks omitted.) State v. Kowal,31 Conn. App. 669, 672 (1993). "In evaluating the validity of such (an investigative) stop, courts consider whether, in light of the totality of the circumstances — the whole picture, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Citations and internal quotation marks omitted.) State v. Harrison30 Conn. App. 108, 112 (1993).
In Field v. Goldberg, 42 Conn. Sup. 306, 311 (1991), this court held that a single anonymous tip that a vehicle had been operated erratically coupled with the police officer's brief observation of the vehicle being operated normally did not provide a legally sufficient basis for stopping the vehicle. The court noted that "the constitutional test of the legality of an investigative stop balances the nature of the intrusion upon personal security against the importance of the governmental interest inducing the intrusion." Field v. Goldberg, supra,
42 Conn. Sup. 312, citing State v. Mitchell, 204 Conn. 187, 196
(1987) (Internal quotation marks omitted.). The court distinguished State v. Anderson, 24 Conn. App. 438 (1991). In that case, there was an anonymous tip that a particular truck was being operated by a driver whose license was under suspension. The court approved the stop on the basis that there is a vital CT Page 6204 governmental interest in ensuring that only validly licensed drivers operate vehicles on the public highways and that the "only immediate way to determine the identity of the driver and whether he possessed a valid license was to stop the truck." Id. 445. The court in Field noted that where the tip is about erratic driving, "a more effective investigative procedure, and a less intrusive one, would have been to observe the operation of the vehicle for a longer period of time to see if the essence of the tip could be corroborated." Field v. Goldberg, supra, 312.
In the present case, the defendant commissioner cites Clarkv. Muzio, 40 Conn. Sup. 512 (1986), to support the argument that the police may rely on anonymous tips in determining probable cause to arrest a suspect. The facts in that case, however, are vastly different from those in the present case. In Clark, the motorist had been involved in a collision in a church parking lot and was still on the scene when the police officer arrived. Several witnesses identified him to the officer as the driver and stated that he appeared intoxicated. The police officer observed the motorist in the church playing cards. He administered field sobriety tests to the motorist and, on the basis of all those facts, including the results of the sobriety tests, arrested the motorist on a charge of drunk driving.
Assuming that the investigative "stop" in the Clark case occurred when the police officer commenced the field sobriety tests on the motorist, the officer had ample reasonable and articulable suspicion that the motorist had committed an offense at that time. Not one, but several witnesses spoke to the officer directly and told him that the motorist was drunk and had been in a collision. All of these witnesses were present and available for detailed questioning as to their observations and presumably could have identified themselves. The officer could confirm the information received from the witnesses by his own observation of the vehicles and the plaintiffs condition and demeanor.
In the present case, by contrast, the police officer received a tip from a single anonymous informant who did not speak directly to the officer and whose information about suspicious behavior was never corroborated by the officer's own observations.
The commissioner argues that the police officer had a duty to stop the plaintiff's vehicle after receiving the dispatcher's call, even without observing any abnormal behavior, because of CT Page 6205 the potential danger that the reported erratic driving posed to the plaintiff himself or others. The court agrees that the police officer had an extremely difficult and sensitive decision to make. He could not know at the time whether the plaintiff had actually been operating in a dangerous and illegal manner, as a result of being drunk or ill, thus necessitating an immediate stop of the vehicle. On the other hand, the officer could not know whether the informant was mistaken in his assessment of the plaintiff's driving[1] or even whether the informant's information was being accurately relayed to him by the dispatcher.
The police officer certainly had the duty to protect the public from the danger posed by a possible drunk driver. But the officer also had the duty not to step over the line drawn by the fourth amendment to the federal constitution and article first, § 7, of the Connecticut constitution, a line that protected the plaintiff against an unreasonable investigative stop. State v.Scully, 195 Conn. 668, 674 (1985). "We must recognize that `[t]he needs of law enforcement stand in constant tension with the Constitution protections of the individual against certain exercises of official power. It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards.'" Id., 679, quoting Almeida-Sanchez v.United States, 413 U.S. 266, 273 (1973).
As noted earlier, our courts have held that any observed behavior, criminal or not, even weaving within one's own lane of traffic, may justify a stop, provided only that the totality of the circumstances furnish the police officer with a particularized and objective basis for suspecting the person of criminal activity. State v. Harrison, supra, 30 Conn. App. 113, n. 4. In view of the wide latitude thus afforded the police, the requirement that the officer's action, in circumstances such as those present in this case, be based at least partly on the officer's personal observation should not impose an unreasonable burden on effective law enforcement activity.
For the reasons set forth above, the court reaffirms its ruling in Field v. Goldberg, supra. The court holds that a police officer may not stop a vehicle solely on the basis of an anonymous tip from a single source, relayed through a dispatcher, that the vehicle was being driven erratically. In such a case, the officer must first personally observe some behavior which raises the reasonable and articulable suspicion necessary under CT Page 6206 our constitutions to justify the seizure.
It should be emphasized that the court's ruling is confined to the specific factual circumstances of this case. In a case where the informant is identified or where there are multiple informants or where the officer speaks directly to the informant or where the incident reported involves an accident or other emergency, and depending on all of the other circumstances, the officer may well be justified in stopping the suspect motorist.
In the present case, however, for the reasons set forth above, the court concludes that the stop was not justified under our law. The arrest of the plaintiff was not a legal arrest, therefore, and could not be used as the basis of the suspension of his license under General Statutes § 14-227b.
The appeal is sustained.
Maloney, J.