[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Tom M. Bjunes, Jr. ("Bjunes"), appeals from the final decision of the defendant, Commissioner of Motor Vehicles ("Commissioner"), suspending Bjunes' motor vehicle operator's license for a period of six months. The Commissioner. acted pursuant to General Statutes § 14-227b on the basis that Bjunes failed to pass a breath test of his blood alcohol content ("BAC") after having been arrested on the charge of driving while under the influence of alcohol. Bjunes appeals pursuant to General Statutes § 4-183. The court finds the issues in favor of the Commissioner.
The record reflects the following facts. On April 30, 1999, at approximately 2 a.m., officers of the West Hartford police department were participating in a DUI checkpoint near the intersection of New Britain Avenue and Shield Street.[1] At that time Bjunes drove up in a 1988 Chevrolet Baretta and was stopped by an officer (Magao), who asked Bjunes if he had been drinking. The officer noticed the strong odor of alcohol on Bjunes. (Return of Record ("ROR"), Transcript, p. 14. Another officer (Baran) observed Bjunes' glazed eyes. (ROR, A-44 narrative.) Officer Baran: administered field sobriety tests to Bjunes, who performed poorly on them. (ROR, Transcript, pp. 28-29; A-44 narrative and attachments.)
Bjunes admitted drinking and advised the police that he had been previously arrested for DUI. (ROR, A44 attachments.) Officer Baran arrested Bjunes for DUI, General Statutes § 14-227a, and transported him to the West Hartford Police Department. There, Bjunes was advised of his Miranda rights and his implied consent rights. He was afforded the opportunity to contact an attorney, but declined to do so. Officer Baran offered the breath test to Bjunes and he accepted it, with the first test being administered at 2:24 a.m. with a result of .154% BAC and the second test administered at 3:48 a.m. with a result of .129% BAC. (ROR, A-44 attachments.)
The Commissioner subsequently suspended Bjunes' motor vehicle operator's license. Because Bjunes had a prior violation, the Commissioner issued a one-year suspension. Bjunes requested and received an administrative hearing on May 25, 1999. At this hearing counsel for Bjunes argued solely that the police check point was illegal and therefore under Field v. Goldberg, 42 Conn. Sup. 306 (1991), the suspension was not justified. The hearing officer ruled against Bjunes on May 25, 1999 and imposed a suspension of six months[2]. This appeal followed. CT Page 6689
During the course of the appeal, the Connecticut Supreme Court issued its opinion in Fishbein v. Kozlowski, 252 Conn. 38 (1999). The holding of that case is that the Commissioner's administrative hearing officers should not consider the legality of the initial arrest in suspension proceedings; such hearing officers are limited to the four factors set forth in General Statutes § 14-227b (g). The Supreme Court further ruled that evidence, even if illegally obtained, was admissible in the suspension hearings, to the degree that such a claim was made under the federal constitution. Bjunes then received permission to brief additional issues and submitted two supplemental briefs.
The initial issue of the right to raise the supposed illegal check stop at suspension hearings has been disposed of in Fishbein. In the first supplemental brief filed by Bjunes. he claims that the Fishbein case does not apply to his case, as this would apply a decision, other than Fieldv. Goldberg, retroactively.[3] There is no indication that Field was the controlling precedent prior to the issuance of Fishbein. Cf Papa v.Department of Motor Vehicles, Superior Court, Judicial District of Tolland, Docket No. 44456 (October 16, 1991) (5 Conn.L.Rptr. 144); andScranton v. Department of Motor Vehicles, Superior Court, Judicial District of Tolland, Docket No. 44545, (October 15, 1991) (6 C.S.C.R. 982,5 Conn.L.Rptr. 601). As the Supreme Court noted in Fishbein, the Commissioner and the trial court assumed that Field governed, but there was no controlling ruling of the Supreme Court requiring this result.Fishbein v. Kozlowski, supra 252 Conn. 45. The matter was open for denovo review by the Supreme Court. Id., 46.
Bjunes has submitted, as a supplement to his brief, a stipulation concerning William D. Grady, a hearing officer with the Motor Vehicle Department. The purpose of the stipulation is to demonstrate that untilFishbein was decided, the Commissioner was accepting the defense of an illegal initial stop at the suspension hearing. Even Grady does not state conclusively that the Field rule was a matter of policy with the Commissioner. While the information in the stipulation is undoubtedly true and entitled to weight, Anderson v. Ludgin, 175 Conn. 545, 555
(1978), it is also true that the Fishbein court was aware of the Commissioner's practice at some or all of the hearings. Fishbein still did not consider that Field was settled law, but that the issue was subject to plenary review. Fishbein v. Kozlowski, supra, 252 Conn. 46.
Even if Fishbein announced new law, there is no reason why it should not be applied retroactively to Bjunes. As our Supreme Court declared inState v. Ryerson, 201 Conn. 333, 339 (1986):
 As a rule, judicial decisions apply "retroactively.". . . CT Page 6690
 Indeed, a legal system based on precedent has a built-in presumption. of retroactivity. . . . If a "new" constitutional doctrine is truly right, we should not reverse lower courts which have accepted it; nor should we affirm those which have rejected the very arguments we have embraced.
(Citations omitted; internal quotation marks omitted.) See also State v.DeFusco, 27 Conn. App. 248, 253, n. 4 (1992), aff'd 224 Conn. 627 (1993) (court must decide appeal under new precedent, notwithstanding that overruled precedent was controlling authority at time of search).
In State v. Bernier, 46 Conn. App. 350, 371 (1997), rev'd on other grounds, 246 Conn. 63 (1998), Judge Ronan speaks of the legal system having a "presumption of retroactivity." He sets forth a three part test for retroactivity as recognized in Neyland v. Board of Education,195 Conn. 174, 179 (1985), having its origin in Chevron Oil Co. v. Huson,404 U.S. 97 (1971). To have retroactivity, first, the decision must not have established a new principle of law, overruling clear past precedent; second, applying the rule of law as developed must further and not retard its purposes; and third, a holding of retroactivity must not produce substantial inequitable results. State v. Bernier, supra. 46 Conn. App. 371.
Following Bernier, the three part test is satisfied here. As indicated, the Field rule was assumed to apply prior to Fishbein, but there was no clear holding from any appellate court. Fishbein was the first time the Supreme or Appellate Court considered the issue directly. The second and third parts of the test are answered by the direction of Fishbein and cases cited therein that motor vehicle carnage due to drunk driving justified limiting the issues of the administrative hearing to the four factors. To continue to apply Field here would certainly not advance the applicability of the rule and would be inequitable as well.
In addition, Bjunes' argument is weakened by the case of Dolan v.Salinas, Superior Court, Judicial District of New Britain, Docket No. 0494202 (July 22, 1999). In Dolan, the driver was arrested for DWI on February 5, 1999, and took an administrative appeal from the suspension of his license, in part on the ground that the initial stop was illegal. Judge McWeeny upheld the Commissioner on July 22, 1999, before Fishbein
was decided. An appeal was taken to the Appellate Court. On March 29, 2000, Judge McWeeny's decision was affirmed by the Appellate Court in light of Fishbein. Dolan v. Salinas, Appellate Court, AC 19902 (March 29, 2000). This is a case where Fishbein was applied to an incident occurring before the date of the decision. The court does not believe it sufficient to show, as Bjunes has done by the filing of an affidavit, by Dolan's CT Page 6691 attorney, that the Appellate Court never had oral argument or briefs on the retroactivity issue. That Court's actions demonstrate that Fishbein
is the law and that it is applicable to incidents occurring before December, 1999.
The issue raised in Bjunes' second supplemental brief is one left open in Fishbein — whether the Connecticut Constitution mandates the application of the "exclusionary rule" of criminal procedure to license suspension hearings.[4] Fishbein v. Kozlowski, supra, 252 Conn. 53, n. 10. Whether the exclusionary rule applies to administrative proceedings has long been unsettled. See, e.g., "Constitutional Law: The ExclusionaryRule in Administrative Proceedings," 2 Conn.L.R. 648 (1970). As most courts have indicated, the application of the exclusionary rule under the Connecticut Constitution (Article I, §§ 7, 9) to proceedings such as motor vehicle suspension hearings depends upon balancing "the interests of the parties with that of the police officers." Housing Authority ofCity of Stamford v. Dawkins, Superior Court, Judicial District of Stamford/Norwalk Housing Session at Norwalk, Docket No. SPNO-9502-16173 (May 10, 1995) (14 Conn.L.Rptr. 450); aff'd, 239 Conn. 793 (1997).
The Supreme Court in Fishbein concluded that under the federal constitution the application of the exclusionary rule to motor vehicle hearings is not required. Similarly, in Payne v. Robinson, 207 Conn. 565
(1988), the Supreme Court refused to apply the rule to probation revocation hearings. In finding the exclusionary rule inapplicable, the Court was obliged to look to the purpose of the rule — not to "redress the injury to the privacy of the search victim . . . [but to] deter future unlawful police conduct." Id., 570.
Bjunes argues that Article I, §§ 7, 9 of the Connecticut Constitution require the application of the exclusionary rule to motor vehicle suspensions. His argument to apply the exclusionary rule fails, however, in that he seeks privacy protections for those illegally stopped at check points, citing Article I, § 9 and State v. White, 229 U.S. 125
(1994). The issue of privacy, which is admittedly a central concern of the Fourth Amendment and also Article I, §§ 7, 9, has been resolved inFishbein. The operator is "not entitled to all of the procedural protections that would be available in a criminal proceeding." Fishbeinv. Kozlowski, supra, 252 Conn. 49.
As indicated above, the sole remaining issue from Fishbein is the application to suspension hearings of the state's criminal exclusionary rule, the purpose of which is "to deter future police misconduct by removing the principal inducement to that misconduct." State v. Brown,14 Conn. App. 605, 632 cert. denied, 208 Conn. 816 (1988). The purpose of deterrence is satisfied by applying the rule only to the criminal CT Page 6692 proceeding, and not to the administrative hearing. As Judge Tierney found in Dawkins in similar circumstances:
 First the court finds that the application of the exclusionary rule to this . . . action would at best achieve only a marginal deterrent effect. Second it finds that the further exclusion of such seized evidence in this trial would not appreciably enhance the deterrent effect already created by the inadmissibility of the tainted evidence in a criminal trial. Third this court finds that the use of the seized evidence in this case falls outside the offending officer's zone of primary interest. The final finding is that the exclusion of such evidence will not significantly affect a police officer's motivation in conducting a search.
Housing Authority of city of Stamford v. Dawkins, supra, Superior Court, Docket No. SPNO-9502-16173.
Bjunes also relies upon the holding in State v. Marsala, 216 Conn. 150
(1990). In Marsala, the Connecticut Supreme Court refused to accept the federal good-faith exception to the exclusionary rule. Bjunes agues that such strict adherence to the original holdings of Fourth Amendment jurisprudence mandates that this court also apply the exclusionary rule to motor vehicle hearings.
The court in Marsala refused to give up the traditional view of the exclusionary rule — declining to say that a "close enough is good enough" standard applied instead of the "probable cause" standard — because of the effect it would have on the "warrant issuing process."State v. Marsala, supra, 216 Conn. 169. There was a fear that under a "good faith" exception, the police would not act with care in obtaining search warrants. Id.
This concern does not arise in the motor vehicle suspension process. Our Supreme Court has long emphasized a separation between the criminal drunk driving statutes and the administrative process. "On balance, we conclude that any deterrent purpose manifested by the legislative history of § 14-227b is incidental to its overall remedial purpose of removing from the highways those who have exhibited a propensity to drive while under the influence of alcohol." State v. Hickam, 235 Conn. 614,625 (1995). With this different purpose in the motor vehicle license suspension case, the concerns of Marsala may be relaxed.
This does not mean that the provisions of the federal and state CT Page 6693 constitutions may not be used in the criminal context. In this case Bjunes, according to his counsel at oral argument, moved to dismiss the criminal charge of DWI, citing State v. Mario P., No. 31 36 74 (1996) (setting forth standards for valid check stops) and was able to have his prosecution ended. We should not fear, as Bjunes suggests, that disallowing the exclusionary rule in the administrative context while allowing it in the criminal case will lead to police misconduct and overreaching. As the court in Fishbein declared: "In summary, we reject the plaintiffs argument envisioning wholesale arbitrary or discriminatory investigative stops." Fishbein v. Kozlowski, supra, 252 Conn. 55.
Bjunes has not pressed the arguments made in his original brief and the court has addressed those arguments made in his supplemental briefs. Therefore, the appeal is dismissed.
Henry S. Cohn, Judge