[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
CT Page 10027
 I. FACTUAL AND PROCEDURAL BACKGROUND
The defendant moves to suppress the results of the blood alcohol test, the field sobriety tests, and all oral or written statements following a stop of his motor vehicle on November 13, 2001. Specifically, the defendant alleges that the New Britain police officer who stopped his vehicle lacked reasonable suspicion to do so because the stop was effectuated as a result of an anonymous tip which lacked specificity and reliability. The defendant's motion to suppress dated April 24, 2002 was filed in court on July 19, 2002. The memorandum in support of the defendant's motion to suppress was filed on July 3, 2002. Argument was heard before this Court on July 19, 2002. Both parties have stipulated to the facts as contained in the original and follow-up police reports regarding the arrest of the defendant on November 13, 2001.[1]
The pertinent facts contained in the original police report regarding the stop of the defendant's motor vehicle are as follows: "That on this date at approximately 1325 hrs headquarters dispatched a report of a vehicle being operated in an erratic manner on Allen Street. That at this time I [Officer David Rohon] was at the intersection of Farmington Avenue and Allen Street in a marked police vehicle. That dispatched [sic] provided further information that another concerned citizen, now known to be Jacqueline Santana had observed Ct. 593NPE, described as a red Nissan drive up and over the curbing. That as Ct. 593NPE reached the intersection of Farmington Avenue and Allen Street the vehicle turned left onto Biruta Street where I signaled the vehicle to pull over." The relevant facts contained in the follow-up incident report are the following: "In my [Officer Chandler's] interview with Ms. Santana she stated that she started following the listed vehicle in Newington on Cider Street. That at that time the male driver, who was also the only person in the vehicle. Was driving the vehicle all over the road, from side to side. That he almost hit on coming cars more than once. That she kept following the vehicle up Allen Street city. And at one point in time the vehicle went up onto the side walk, then back onto the road. She kept following untile [sic] the vehicle was stopped by the police. She stated, the reason she kept following the vehicle was so she could keep in contact with the police on her cell phone. So that we could stop the vehicle before it hit killed someone. Because the driver was drunk or sick or something."[2]
 II. DISCUSSION
"An investigatory stop is authorized if the police officer had a reasonable and articulable suspicion that a person has committed or is CT Page 10028 about to commit a crime. . . . Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . The police officer's, decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citations omitted; internal quotation marks omitted.) State v. Bolanos, 58 Conn. App. 365,368-69, 753 A.2d 943 (2000).
The present matter is similar to the case of State v. Bolanos, supra. In that case, a police officer "received a dispatch that . . . a nightclub employee had called to report that an intoxicated person had left the establishment and was driving a car east on Route 1. The caller further identified the car by make, model and color. . . . [The officer] knew that employees of [the nightclub] had reported intoxicated drivers in the past. Within a few minutes of receiving the information, [the officer] noticed a [vehicle] that fit the description he had received pass by his location. He followed the [vehicle] for approximately one mile, but noted no irregular operation." Id. 366-67. Based on these facts, the Appellate Court ruled that the officer had reasonable suspicion to stop the vehicle and the trial court erred in granting the defendant's motion to suppress. See id. 369-70.
The defendant argues that Bolanos is distinguishable from the present case because "[n]othing of the informant[']s background or reliability or credibility can be ascertained at the point in time when the Police Dispatch gave the information to the arresting officer. In Bolanos, the tipster had a degree of reliability based on the establishment that the tipster worked in a bar." (Defendant's Memorandum in Support of Motion to Suppress, pp. 3-4.) However, it was the fact that the informant's identity was ascertainable which was the focus of the Appellate Court's conclusion that the informant was credible and reliable. "When an informant provides sufficient information so that he may be located and held accountable for providing false information, the officer is justified in assuming the caller is being truthful in so identifying himself. . . . Moreover, citizen informers are presumptively reliable if they are identifiable." (Citations omitted; internal quotation marks omitted.) State v. Bolanos, supra, 58 Conn. App. 369. The informant in the present case followed the defendant's vehicle until the police arrived and stopped the vehicle. She remained in contact with the police throughout the period of time that she was following the defendant. She did not merely provide the tip and hang up. Clearly, her actions indicate that she intended to make her identity known and to be held accountable CT Page 10029 for the information that she provided. Therefore, despite the fact that Officer Rohon was unaware of the informant's identity at the time he stopped the defendant's vehicle, her identity was ascertainable, and therefore, she is presumptively reliable.
It is not clear from the police reports whether Officer Rohon himself was aware that the informant was following the defendant and that she was in continual telephonic contact with the police dispatcher. However, this is not a material consideration. "The collective knowledge of an entire organization may be imputed to an individual officer when he is requested to stop and search a vehicle." State v. Schoenbneelt, 171 Conn. 119,124, 368 A.2d 117 (1976); see State v. Coardes, 51 Conn. App. 112, 116,720 A.2d 1120 (1998), cert. denied, 247 Conn. 957, 723 A.2d 814 (1999), and cert. denied, 526 U.S. 1094, 119 S.Ct. 1511, 143 L.Ed.2d 663 (1999) (holding that "[t]he collective knowledge of the officers was sufficient to raise a reasonable and articulable suspicion of criminal activity that justified their decision to pursue and stop the defendant's car").
The defendant cites Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375,146 L.Ed.2d 254 (2000), and State v. Hammond, 257 Conn. 610, 778 A.2d 108
(2001), for the proposition that an anonymous tip alone is insufficient for a finding of reasonable suspicion to be made. (Defendant's Memorandum, pp. 4-7.) However, those cases involved truly anonymous informants who called the police, provided information, and hung up. The police knew absolutely nothing about them and did not have the ability to learn anything about them. In contrast, as stated previously, the informant in the present case indicated that she was following the defendant and she remained on the phone with the police until his vehicle was stopped. Presumably, she was not silent while on the phone with the dispatcher. It is reasonable to infer that while the informant was following the defendant and on the phone with the police, she was describing the erratic driving of the defendant as stated in the follow-up incident report. It is clear from these actions that her information was reliable and credible, and that she intended to be held accountable for the information she provided.
In addition, the subject matter of the anonymous tips in Florida v.J.L. and State v. Hammond was gun possession and narcotics possession respectively. Although these undoubtedly are serious matters, our Supreme Court and Appellate Court have given special consideration to cases of suspected drunken driving. See, e.g., State v. Bolanos, supra,58 Conn. App. 370 ("We must also note the state's pervasive interest in preventing drunk driving and the attendant tragedies that often result from the operation of a motor vehicle by intoxicated persons. . . . Because of this pervasive public interest, the officer was not required to wait for erratic driving or an accident to occur before pulling over CT Page 10030 the defendant.") (Citations omitted.); State v. Pierog, 33 Conn. App. 107,111-12, 634 A.2d 301 (1993), cert. denied, 228 Conn. 920, 636 A.2d 851
(1994) ("Our Supreme Court has also recognized the pervasive societal interest in the apprehension and punishment of drunken drivers and has found that balancing the circumscribed nature of a Terry stop intrusion against the serious risks of criminal behavior, especially in the context of the risks associated with driving while under the influence of intoxicating liquor, we are persuaded that [a] brief detention [does] not violate [a defendant's] due process rights.") (Internal quotation marks omitted.)
Finally, the informant in the present matter was not the only person who called the police to report the defendant's erratic driving. Officer Rohon's report clearly states that "headquarters dispatched a report of a vehicle being operated in an erratic manner on Allen Street" followed by the dispatcher providing "further information that another concerned citizen" observed the vehicle drive up and over the curbing. (Emphasis added.) The trial court decision cited by the defendant as persuasive authority, Schenfield v. Commissioner of Motor Vehicles, Superior Court, judicial district of Hartford, Docket No. CV 97 0569900 (June 13, 1997,Maloney, J.) (19 CLR 621), was limited to its particular facts and Judge Maloney recognized that "where there are multiple informants . . . and depending on all of the other circumstances, the officer may well be justified in stopping the suspect motorist."[3] Id.
"In evaluating the validity of . . . a stop, courts must consider whether, in light of the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks omitted.) State v. Lipscomb, 258 Conn. 68, 76, 779 A.2d 88 (2001). The police received phone calls from two different informants that the defendant was driving erratically. The first informant provided the name of the street that the defendant was traveling on. The second informant provided the police with the make, color and license plate number of the defendant's automobile. This information was verified by Officer Rohon. The informant followed the defendant and remained on the phone with the police until he was stopped. Presumably, she was describing to the dispatcher the erratic behavior that she was witnessing as documented in the follow-up police report. She clearly intended to make her identity known to the police and to be held accountable for the information that she provided. These facts are sufficient for this Court to find that the police had reasonable and articulable suspicion that the defendant was operating a motor vehicle while under the influence of liquor. Therefore, the stop of the defendant's vehicle was lawful.
 III. CONCLUSION
CT Page 10031
Based upon the foregoing analysis, the defendant's motion to suppress is denied.
Dated at New Britain, Connecticut this sixth day of August, 2002.
BY THE COURT,
Owens, J.