[Nos. 42607, 42613.    En Banc.    October 11, 1973.]

THE STATE OF WASHINGTON, *Petitioner,* v. DENNIS WETHERELL, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. DENNIS C. WRIGHT, *Respondent.*

*C. J. Rabideau, Prosecuting Attorney,* for petitioner.

*Edward F. Shea* (of *Peterson, Taylor & Day*), for respondent.

HAMILTON, J.—The instant cases, both arising from Franklin County, Washington, have been consolidated on appeal. The question in both is the propriety of the trial court's order suppressing the results of defendants' blood and breath alcohol tests prior to trial of negligent homicide charges levied against them.

Although the charges arose from separate and unrelated, single-car accidents, the facts relevant to the issues involved are somewhat similar. Each accident involved an automobile driven by a defendant and fatal injuries to a passenger therein. Both defendants were removed to local

hospitals from the scenes of their accidents and were not then, nor until some 2 or 3 months later, placed under arrest. In each instance, an officer, other than the one investigating at the scene of the accident, was promptly dispatched to the hospital to question the defendant. At the time of questioning, neither defendant was unconscious, albeit each suffered varying injuries and was undergoing differing medical ministrations. On neither occasion did the officer involved give the statutory implied consent[1] or *Miranda* warnings before obtaining the blood sample or administering the breathalyzer test.

In the case of defendant Wetherell, the officer asked the attending physician for a blood sample. Wetherell overheard the conversation and asked what the blood sample was for, to which the officer replied that the matter would be discussed later. Wetherell then stated they would discuss it now. The officer without further reply stepped from the room and, returning a short time later with knowledge of the death of Wetherell's passenger, and without further discussion with Wetherell, obtained a blood sample from the attending doctor. This blood sample was subsequently analyzed for alcohol content, the result of which testing was suppressed by the trial court.

Defendant Wright, on the other hand, when queried by the officer voluntarily consented to the administration of a chemical breath test commonly known as the breathalyzer test. Such a test was given and the results thereof suppressed by the trial court, as was the result of a second similar test administered with Wright's consent some 2 or 3 hours later by another officer who, prior to Wright's consent, gave the *Miranda* warnings.

---

[1] RCW 46.20.308(1), the implied consent statute, provides in pertinent part: "Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only."

The individual trial judges in both instances essentially predicated the orders suppressing the results of the respective tests upon the failure of the officers to give the implied consent warnings required by RCW 46.20.308 (1).

For the reasons that follow, we affirm the trial court's order in the Wetherell case and reverse the order in the Wright case.

Implied consent statutes have been enacted in the great majority of our states and have, with substantial uniformity, withstood constitutional attacks. 45 Wash. L. Rev. 656 (1970); Note, *Arrest Requirement for Administering Blood Tests,* 1971 Duke L.J. 601; *Suspension or Revocation of Driver's License for Refusal to Take Sobriety Test,* Annot., 88 A.L.R.2d 1064 (1963).

The intent and purpose of such statutes is to provide fair, efficient, scientific, objective, and reasonably reliable data relating to the sobriety of an arrested motorist believed, upon reasonable grounds, to have been driving while under the influence of intoxicants. As an incentive to induce an apprehended driver's submission to a blood-alcohol test, most statutes provide that a refusal to take such a test will result in an administrative suspension or revocation of driving privileges. Thus, the aim of such statutes is to provide significant aid in the just and evenhanded enforcement of laws proscribing driving while inebriated, as well as to lend material assistance in reducing the serious hazard posed to life and property by the presence of drunk drivers on the highways.

Our current implied consent statute[2] was adopted by the people of this state through the initiative process on November 5, 1968.[3] Its language in general is derived from the Uniform Motor Vehicle Code, and is not unlike similar statutes found in other states. The constitutionality of our

---

[2]Codified as RCW 46.20.092, 46.20.308, 46.20.311, 46.20.911 and 46.61.506.

[3]Initiative Measure 242.

statute has been upheld by this court in *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971).

RCW 46.20.308(1) provides:

Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood *if arrested* for any offense where, at the *time of the arrest, the arresting officer* has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only.

(Italics ours.)

RCW 46.20.308(3), in relevant part, continues:

If, *following his arrest*, the *person arrested* refuses upon the request of a law enforcement officer to submit to a chemical test of his breath, after being informed that his refusal will result in the revocation or denial of his privilege to drive, no test shall be given.

(Italics ours.)

Paraphrasing, these provisions in essence declare that the driver of a motor vehicle upon the public highways of this state: (1) impliedly consents to a sobriety test; (2) when arrested for any offense; (3) where the arresting officer has reasonable grounds to believe the driver was operating the motor vehicle while under the influence of alcohol; (4) if the arresting officer, or another upon like grounds, requests

the driver to take the test after advising him of (a) his right to refuse the test, (b) his right to have additional tests administered, and (c) that his privilege to drive will be revoked if he refuses to submit to the test; and (5) upon refusal no test shall be administered.

In the context of the instant cases, the threshold question appears to be whether the foregoing provisions apply to motor vehicle drivers not under arrest for any offense at the time a law enforcement request is made for a sobriety test.

■ We are convinced from the language utilized in the quoted provisions—particularly such phrases as "if arrested," "time of arrest," "arresting officer," "following his arrest," and "person arrested"—that the drafters of the legislation plainly and properly contemplated that the lawful arrest of an offending motorist would be the indispensable element triggering any implied consent to a sobriety test. Consequently, when a driver suspected of inebriation is not under arrest at the time of an official request for the administration of a sobriety test, no consent thereto on the part of such driver can be implied and no administrative suspension of license for refusal can be imposed. Any consent on the part of such a driver to the administration of a sobriety test must be actual. The statutory implied consent warnings, therefore, become superfluous.

■ Supportive of the statutory arrest requirement, and undoubtedly a reason therefor, is the holding of the United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). In that case the court upheld a drunken driving conviction obtained by the admission into evidence of the results of a blood analysis, the sample for which was taken from the defendant after his lawful arrest and over his objection. In so doing, the court held that the extraction of the blood sample from the defendant was tantamount to a search for and seizure of real or physical evidence which was governed by the fourth amendment to the United States Constitution. The war-

rantless nature of the designated search was justified upon the grounds that it was incident to a lawful arrest coupled with a reasonable emergency, *i.e.*, the progressive diminution of the blood-alcohol level during the time interval incident to obtaining a search warrant. Concomitantly, the court rejected a contention that the involuntary extraction of the blood sample constituted compulsory self-incrimination in contravention of the Fifth Amendment privilege, on the grounds that the sample did not amount to testimonial or communicative evidence. In this latter vein, we have recognized the *Schmerber* distinction between physical and testimonial evidence, insofar as Fourth and Fifth Amendment rights be concerned, in upholding the constitutionality of our implied consent statute. *State v. Moore, supra.*

Both before and after *Schmerber*, other courts reached substantially similar conclusions with respect to the interpretation and application of implied consent statutes. Almost without exception,[4] each court considering the matter held a lawful arrest to be the essential introductory step to implied consent provisions. Results adduced from sobriety tests not preceded by such an arrest or by actual consent were condemned and held to be inadmissible evidence. *Schutt v. Macduff*, 205 Misc. 43, 127 N.Y.S.2d 116 (1954); *Otte v. State*, 172 Neb. 110, 108 N.W.2d 737 (1961); *State v. Kroening*, 274 Wis. 266, 79 N.W.2d 810, 80 N.W.2d 816 (1956); *State v. Auger*, 124 Vt. 50, 196 A.2d 562 (1963); *State v. Towry*, 26 Conn. Supp. 35, 210 A.2d 455 (1965); *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968); *Opinion of the Justices*, 255 A.2d 643 (Me. 1969); *Mitchell v. State*,

[4]State judicial construction and application of South Dakota's implied consent law tended to permit its invocation following a prior *unlawful* arrest, as distinguished from a prior *lawful* arrest. *State v. Batterman*, 79 S.D. 191, 110 N.W.2d 139 (1961); *State v. Werlinger*, 84 S.D. 282, 170 N.W.2d 470 (1969). A three-judge panel of the Federal Court for the Eighth Circuit held the statute as so construed, to be in violation of the Fourth Amendment. *Holland v. Parker*, 354 F. Supp. 196 (S.D. 1973).

227 So. 2d 728 (Fla. App. 1969); *Holland v. Parker,* 354 F. Supp. 196 (S.D. 1973).

Our current implied consent statute compels a like conclusion.

We turn now to the instant cases. Defendant Wetherell was not under lawful arrest nor did he consent to the extraction of a blood sample for sobriety analysis at the time the sample was taken. Under such circumstances, the intrusion into his body to extract the blood for analysis amounted to an unlawful search and seizure prohibited by the fourth amendment to the United States Constitution. *Schmerber v. California, supra.* The results of the analysis were, accordingly, properly suppressed. *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961).

Defendant Wright likewise was not under arrest at the time he was questioned. Nevertheless, he consented to the administration of the breathalyzer test, not once but twice. It is not contended, nor would the record sustain a conclusion, that his consent was coerced or otherwise involuntary. Having actually consented thereto, the results of the test became admissible. *State v. Bassett,* 128 Vt. 453, 266 A.2d 438 (1970); *State v. Seager,* 178 Neb. 51, 131 N.W.2d 676 (1964); *People v. Ward,* 307 N.Y. 73, 120 N.E.2d 211 (1954). It was error to suppress such evidence.

The order of suppression in State v. Wetherell is affirmed. The suppression order in State v. Wright is reversed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied December 11, 1973.