[No. 63906-0. En Banc.]
Argued October 10, 1996.     Decided January 16, 1997.

THE STATE OF WASHINGTON, *Petitioner*, v. JAMES D. RIVARD, *Respondent*.

64

*James R. Sweetser, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for petitioner.

*Richard L. Bechtolt, Jr.,* for respondent.

SMITH, J. — The Prosecuting Attorney of Spokane County, for the State of Washington, seeks review of an opinion of the Court of Appeals, Division III,[1] which affirmed a decision of the Spokane County Superior Court suppressing results of a blood alcohol test administered to Respondent James D. Rivard shortly after an accident in which an automobile he was driving struck a person riding a skateboard.[2] We granted review. We reverse the Court of Appeals.

---

[1]*State v. Rivard,* 80 Wn. App. 633, 910 P.2d 520 (1996).

[2]The record does not indicate the actual time between the accident and the blood test. However, *Miranda* rights were read to Respondent shortly after midnight in the early morning of December 2, 1993. The officer wrote his report at 3:00 a.m. on December 2, 1993. Transcript of Defense Mot. to Suppress and 3.5 Hearing at 12, 28, and 30.

## QUESTIONS PRESENTED

The questions presented are: (1) whether, whenever a driver has been involved in a serious automobile accident, the implied consent statute, RCW 46.20.308, must be invoked and the driver advised by a police officer of that person's statutory right to additional testing, or whether a police officer may obtain voluntary consent from the driver to a blood alcohol test independent of the implied consent statute; and (2) whether the driver was under arrest when the police officer gave the driver "specific instructions not to leave" or whether there was a de facto arrest which required reading of implied consent warnings.

## STATEMENT OF FACTS

On the night of December 1, 1993 at approximately 11:40 p.m. Respondent James D. Rivard was the driver of an automobile which struck skateboard rider James Mecsko in Spokane.[3] Spokane Police Officer James J. Olsen responded to the scene, assisted the paramedics in rendering aid to Mr. Mecsko, and investigated the accident.[4] Mr. Mecsko later died from the injuries he sustained in the accident.[5]

Respondent Rivard was near the scene of the accident at a telephone booth (from which he had called his father) when Officer Olsen first contacted him. As part of the investigation, Officer Olsen asked Respondent some preliminary questions. Shortly after midnight in the early morning of December 2, 1993 Officer Olsen read to Re-

---

[3]Transcript of Defense Mot. to Suppress and 3.5 Hearing at 29 and 31. No. 94-1-00132-0, Findings of Fact and Order Re: Mot. to Suppress Blood Test Results at 1.

[4]Findings of Fact and Order Re: Mot. to Suppress Blood Test Results at 1.

[5]*Id.* at 1. The record does not indicate the exact time and date of Mr. Mecsko's death. However, he was alive when he was transported by ambulance from the accident scene to the hospital. Transcript of Defense Mot. to Suppress and 3.5 Hearing at 28.

spondent his constitutional rights.[6] Respondent indicated he understood his rights and signed the *Miranda* card provided by the officer.[7] Respondent Rivard's father, Douglas S. Rivard, arrived at about this time and was present during the conversation between his son and the officer which followed the *Miranda* warnings.[8] Respondent's father was also present when the officer administered a field sobriety test to Respondent.[9]

During the on-site investigation, Sergeant Stanley C. McGhee took Officer Olsen aside and told him "we need to have a blood test."[10] Officer Olsen then asked Mr. Rivard to give a blood sample, indicating that "in cases like this our usual procedure is to get a blood test."[11] Respondent was given a choice of hospitals.[12] He was not advised of his right to independent testing.[13] After consultation with his father, Respondent agreed to the blood test.[14] Officer Olsen transported Respondent to Sacred Heart Hospital where a blood test was administered.[15] Prior to the blood test Respondent signed a waiver that stated he "consented of his free will to allow [the] Law Enforcement Agency to obtain

---

[6]Commonly referred to as *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966). Transcript of Defense Mot. to Suppress and 3.5 Hearing at 12-13.

[7]Transcript of Defense Mot. to Suppress and 3.5 Hearing at 12-14.

[8]*Id.* at 19-21. It is not clear from the record whether Respondent's father arrived at the scene of the accident prior to or immediately after *Miranda* rights were read to Respondent. However, the father was present during conversations between Respondent and Officer Olsen near the scene of the accident and at the hospital.

[9]*Id.* at 16, 17, 40.

[10]No. 94-1-00132-0, Findings of Fact and Order Re: Mot. to Suppress Blood Test Results at 1.

[11]*Id.* at 2.

[12]*Id.*

[13]*Id.*

[14]*Id.*

[15]Transcript of Defense Mot. to Suppress and 3.5 Hearing at 38.

a Legal Blood Sample."[16] He was then allowed to leave.[17] Respondent was not arrested at the scene of the accident. However, the trial court concluded he was probably not free to leave.[18]

Respondent James D. Rivard was charged in the Spokane County Superior Court on February 8, 1994 with vehicular homicide under RCW 46.61.520, the Information reading:

> Comes now the Prosecuting Attorney in and for Spokane County, Washington, and charges the defendant(s) with the following crime(s): VEHICULAR HOMICIDE, committed as follows: That the defendant, JAMES DOUGLAS RIVARD, in Spokane County, Washington, on or about December 1, 1993, operated a motor vehicle while under the influence of or affected by intoxicating liquor and any drug, and in a reckless manner, and with disregard for the safety of others, and as a proximate result of operating said vehicle in that manner or condition did cause injuries to James Mecsko, who died on or about December 1, 1993, as a proximate result of the injuries received[.]

| _s/ Steven J. Kinn_ | 12984 |
| --- | --- |
| Deputy Prosecuting Attorney | WA St. Bar ID #[19] |

On September 23, 1994 the Honorable Kathleen M. O'Connor, after a hearing signed an order granting Respondent's motion to suppress the results of the blood alcohol test.[20] She based her decision upon testimony heard on July 5, 1994 and arguments heard on July 5 and

---

[16]Clerk's Papers at 13.

[17]Number 94-1-00132-0, Defendant's Mot. to Suppress, Court's Oral Decision, at 19.

[18]No. 94-1-00132-0, Findings of Fact and Order Re: Mot. to Suppress Blood Test Results at 2.

[19]No. 94-1-00132-0, Information.

[20]No. 94-1-00132-0, Findings of Fact and Order Re: Mot. to Suppress Blood Test Results at 3.

September 14, 1994.[21] The trial court originally granted the same motion on the date of Respondent Rivard's first trial,[22] July 6, 1994.[23] A mistrial was declared when the jury was unable to reach a verdict.[24]

The State of Washington (Petitioner) sought review in the Court of Appeals of the order of the Superior Court suppressing the blood test results.[25] On September 27, 1994 Commissioner Kenneth H. Kato denied the motion for discretionary review and stay of trial.[26] On October 24, 1994 the Court of Appeals, Division III, granted Petitioner's Motion to Modify the Commissioner's Ruling.[27] The Court of Appeals, the Honorable Dennis J. Sweeney writing, on February 15, 1996 affirmed the order of the trial court suppressing the results of Respondent Rivard's blood test.[28] We granted review on July 9, 1996.

## DISCUSSION

### IMPLIED CONSENT STATUTE

The implied consent statute, former RCW 46.20.308,[29] in 1993 when this action arose, provided in pertinent part that:

(1) Any person who operates a motor vehicle within this

---

[21]*Id.* at 1.

[22]No. 14336-8-III, Mot. to Modify at 2.

[23]No. 94100132-0, Minute Record, Clerk's Papers at 15.

[24]*Rivard,* 80 Wn. App. at 634.

[25]No. 14336-8-III, Commissioner's Ruling.

[26]*Id.*

[27]No. 14336-8-III, Order Granting Petitioner's Mot. to Modify Commr's Ruling of Sept. 27, 1994.

[28]No. 14336-8-III, Div. Three, Panel Four; *State v. Rivard,* 80 Wn. App. 633, 910 P.2d 520 (1996).

[29]In 1995 the legislature made some changes to the statute. Changes in sections (1), (2), and (3) made the statute applicable to drugs, as well as alcohol, and lowered the level of alcohol concentration for persons under twenty-one years of age. LAWS 1995, ch. 332, § 1.

state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

(2) The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor. However, in those instances where: (a) The person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample; or (b) as a result of a traffic accident the person is being treated for a medical condition in a hospital, clinic, doctor's office, or other similar facility in which a breath testing instrument is not present, a blood test shall be administered by a qualified person as provided in RCW 46.61.506(4). *The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.*

(3) Except as provided in this section, the test administered shall be of the breath only. *If an individual is unconscious or is under arrest for the crime of vehicular homicide* as provided in RCW 46.61.520 *or vehicular assault* as provided in RCW 46.61.522, *or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs* as provided in RCW 46.61.502, *which arrest results from an accident in which another person has been injured and there is reasonable likelihood that such other person may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested.*

(Emphasis added.)

■ Petitioner State of Washington argues that mere existence of the implied consent statute does not require its use in all cases of suspected vehicular homicide and that police officers may obtain voluntary consent to blood alcohol testing without invoking the statute.[30] Petitioner further claims that nothing in the text of the statute mandates its use, but concludes there is no reason to follow any other procedure because the trial court found there was a valid voluntary consent.[31] Petitioner does not identify the other procedure to which it referred.

The facts in this case are fairly similar to those in *State v. Wetherell*.[32] In that case, a consolidated appeal, the officers did not give to the accused statutory implied consent warnings or *Miranda* warnings before obtaining a blood sample or administering a breathalyzer test.[33] One defendant, Dennis C. Wright, consented, was later given *Miranda* warnings, and the test was administered a second time.[34] The other defendant never consented.[35]

The basic question in *Wetherell* was whether the statute applied to motor vehicle drivers not under arrest for any offense at the time a law enforcement request was made for a sobriety test.[36] This court reviewed decisions from other courts which considered similar statutes and concluded that a lawful arrest of an offending motorist is an essential step before the implied consent statute ap-

---

[30]Br. of Pet'r at 5.

[31]*Id.* at 5, 10.

[32]82 Wn.2d 865, 514 P.2d 1069 (1973).

[33]There is some uncertainty from the record in this case whether a breath test was offered Respondent Rivard. Officer Olsen testified he indicated only a blood test. Transcript of Defense Mot. to Suppress and 3.5 Hearing at 42, 48. The affidavits of Respondent Rivard and his father indicate a choice was given between a blood test and a breath test. Affidavits July 1, 1994.

[34]*Wetherell*, 82 Wn.2d at 866.

[35]*Id.*

[36]*Id.* at 869.

plies.[37] The court concluded that Mr. Wright was not under arrest at the time he was questioned, but that he nevertheless consented to administration of the test. It was an actual consent because there was nothing in the record to support a conclusion that he was coerced or that his consent was involuntary.[38] The Court concluded the test result was admissible.[39]

Unlike the defendants in *Wetherell,* Respondent Rivard was read his *Miranda* rights prior to the request by the officer for the blood test. He was asked whether he understood his rights. He signed the *Miranda* form and the waiver for the blood test. At no time did he ask to speak with an attorney. Respondent consulted with his father before agreeing to submit to the blood test.

In response to Petitioner's argument, Respondent argues that the court should affirm the suppression motion because the cases cited by Petitioner are not persuasive. Respondent correctly states that *State v. Wetherell* was decided prior to the 1975 amendment of the statute which provided that "a breath or blood test may be administered without consent of the individual so arrested."[40] This provision authorized law enforcement officers to administer a blood test to a person under arrest for certain offenses even without the person's consent. However, the change did not alter the basic requirement of an actual arrest. That requirement has remained constant.

Petitioner cites *State v. Entzel*[41] to support its position that law enforcement is under no obligation to invoke the implied consent statute.[42] Respondent answers that *State v. Entzel* is not on point because it involves driving while

---

[37]*Id.* at 870-71. New York, Nebraska, Wisconsin, Vermont, Connecticut, Utah, Florida, and South Dakota.

[38]*Id.* at 871.

[39]*Id.*

[40]LAWS OF 1975, 1st Ex. Sess., ch. 287, § 4; Br. of Resp't at 4.

[41]116 Wn.2d 435, 805 P.2d 228 (1991).

[42]Br. of Pet'r at 8.

under the influence of intoxicants and an uncooperative defendant,[43] not one with the cooperative attitude of Respondent Rivard in this case. It is not disputed that Mr. Rivard was indeed cooperative.

In further support of his position, Respondent cites a number of cases. He cites *United States v. Wanless*[44] for the proposition that "[i]n considering whether consent is voluntary, the court . . . held that failure to inform a car owner of the right to refuse vitiated that consent."[45] That case involved an inventory search of a vehicle and the question whether the owner's consent was required before proceeding with the search. The issue of voluntariness was not reached because no consent was given.

In all the other cases cited by Respondent the defendants were under arrest at the time of the blood tests. In *State v. Holcomb* the defendant was arrested at the scene, he consented to the test, and the officer then gave him part of the statutory implied consent warning, but not the part concerning availability of an independent test.[46] In *State v. Turpin,* the officer told medical personnel the defendant was under arrest, but did not inform the defendant herself.[47] The police officer did not seek the defendant's consent, but instead instructed medical personnel to proceed with the blood test.[48] The defendant was not aware of the blood test until three days later.[49] In both *Holcomb* and *Turpin* the tests were suppressed for violation of the implied consent statute. Those cases are distinguishable from this one.

In its decision in this case the Court of Appeals focused

---

[43]Br. of Resp't at 7.

[44]882 F.2d 1459 (9th Cir. 1989).

[45]Br. of Resp't at 6-7.

[46]31 Wn. App. 398, 642 P.2d 407 (1982).

[47]94 Wn.2d 820, 620 P.2d 990 (1980).

[48]*Id.* at 822.

[49]*Id.*

on the question whether the Respondent's consent was voluntary. In reaching its conclusion the court relied on BLACK'S LAW DICTIONARY,[50] a Court of Appeals decision,[51] and this court's decision in *Connolly v. Department of Motor Vehicles*.[52] The language the Court of Appeals relied upon in *Connolly* was adopted from an Ohio Appellate Court decision.[53] *Connolly* was decided two years before *Wetherell*. In *Wetherell* this court concluded the defendant's consent was not coerced or otherwise involuntary.[54] The conclusion was reached that the implied consent warnings did not apply because the defendant was not under arrest at the time of the official request for administration of the test and the warnings thus became "superfluous."[55]

The Court of Appeals also cited *State v. Turpin*[56] in support of its conclusion that Respondent should have been informed of his right to obtain an independent blood test "even if the suspect ha[d] not been arrested."[57] In *Turpin* the defendant was under arrest when the blood test was given without her consent or her knowledge. The facts in this case are distinguishable from those in *Turpin*. Respondent Rivard was not under arrest, he was asked by the officer to submit to the blood test, and he was aware the blood test was being administered.

---

[50]BLACK'S LAW DICTIONARY 1575 (6th ed. 1990) ("Produced in or by an act of choice." "The word, especially in statutes, often implies knowledge of essential facts.").

[51]*Roethle v. Department of Licensing*, 45 Wn. App. 607, 726 P.2d 1001 (1986).

[52]79 Wn.2d 500, 504, 487 P.2d 1050 (1971) ("he must have refused knowingly and intelligently, after being advised of his right to have a physician . . . .").

[53]*Rivard*, 80 Wn. App. at 638 (citing *Couch v. Rice*, 23 Ohio App. 2d 160, 161, 261 N.E.2d 187 (1970)).

[54]*Wetherell*, 82 Wn.2d at 871.

[55]*Id.* at 869.

[56]94 Wn.2d 820, 620 P.2d 990 (1980).

[57]*Rivard*, 80 Wn. App. at 635.

The Court of Appeals cited *State v. Schulze*[58] to support the statement that "[a]n officer must inform a suspect of 'his or her right to have additional tests administered by any qualified person of his or her choosing . . . .' RCW 46.20.308(2)."[59] But the statement in *Schulze* applied to persons actually arrested for vehicular homicide and not to persons who are not under arrest but are merely under investigation for an accident which later ripens into a charge of vehicular homicide.[60]

The statement by the Court of Appeals that Respondent "should not lose . . . [the implied consent warning] right because he cooperated and was not arrested" is not consistent with the implied consent statute itself and our prior decisions.[61]

### WHAT CONSTITUTES AN ARREST

The question arises whether there was seizure of the person when Officer Olsen gave Respondent Rivard "specific instructions not to leave" amounting to an unlawful detention or a de facto arrest requiring reading of the implied consent warnings. Citing cases, Respondent argues he was seized at the time of the incident and that if the court finds he was unlawfully detained, evidence of the results of the blood test must be suppressed.[62]

---

[58]116 Wn.2d 154, 804 P.2d 566 (1991).

[59]*Rivard,* 80 Wn. App. at 635.

[60]*Schulze,* 116 Wn.2d at 165 ("Before a person arrested for vehicular homicide may be forced to submit to the blood test mandated by RCW 46.20.308(3) . . . [defendant] must be advised of . . . [defendant's] right to have additional tests administered by a person of . . . [defendant's] choosing. RCW 46.20.308(2)).")

[61]*Rivard,* 80 Wn. App. at 638.

[62]*State v. White,* 97 Wn.2d 92, 105, 640 P.2d 1061 (1982) ("[W]henever a police officer accosts . . . [a person] and restrains . . . [that person's] freedom to walk away, . . . [the officer] has 'seized' that person.") (quoting *Terry v. Ohio,* 392 U.S. 1, 16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)); *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985) (A person is "seized" only if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that . . . [the person] was not free to leave.") (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)).

Respondent relies upon Officer Olsen's statement that he had given Respondent "specific instructions not to leave."[63] However, the meaning of that statement became ambiguous after the question on cross-examination by defense counsel "Had he tried to leave, would you have stopped him?" and the response by Officer Olsen, "I would have attempted to recontact him because I needed more information."[64]

Respondent also argues that the officers treated him for all practical purposes as if he had formally been arrested for vehicular homicide.[65] But the victim, Mr. Mecsko, was still alive when he was taken by ambulance from the scene of the accident.[66] There could not have been an arrest for vehicular homicide at the scene of the accident because no death had resulted at that time. The relevant inquiry to determine whether a person is "in custody" is whether a reasonable person in the suspect's position at the time would have thought so.[67]

In his affidavit Respondent Rivard stated, "I was not arrested."[68] The trial court, hearing the facts presented at trial and argued at the hearing on the motion, concluded he was not arrested.[69] The Court of Appeals also concluded he was not arrested.[70] Respondent's counsel conceded in

---

[63]Transcript of Defense Mot. to Suppress and 3.5 Hearing at 23.

[64]*Id.*

[65]Br. of Resp't at 6.

[66]Transcript of Defense Mot. to Suppress and 3.5 Hearing at 28.

[67]*State v. Short*, 113 Wn.2d 35, 41, 775 P.2d 458 (citing *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). In *Berkemer* the court stated "A . . . [police officer's] unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable . . . [person] in the suspect's position would have understood . . . [that person's] situation." (footnote omitted). *Berkemer*, 468 U.S. at 442.

[68]Aff. of James D. Rivard, Clerk's Papers at 10.

[69]No. 94-1-00132-0, Findings of Fact and Order Re: Mot. to Suppress Blood Test Results at 2.

[70]*Rivard*, 80 Wn. App. at 638.

the Suppression and 3.5 Hearing that his client was not arrested.[71]

The record before this court also supports the conclusion that Respondent was not under arrest at the scene of the accident. He was not subjected to restraints commonly associated with an arrest. He was initially approached by Officer Olsen in a public area near a telephone booth near the scene of the accident. While he was asked not to leave, he was not physically apprehended, restrained, handcuffed, placed in the police vehicle, nor driven to the police station. At no point did any of the officers draw their weapons. Indeed Respondent telephoned his father and was able to consult with him and have him present during his conversations with Officer Olsen. The only event which might conceivably be associated with an arrest was that Respondent was read his *Miranda* rights. That event alone does not constitute an arrest.[72]

Respondent also cited cases to support an argument that the evidence seized should be suppressed if there was an unlawful detention.[73] There is no evidence of an unlawful detention in this case. Those cases are thus not relevant.

## SUMMARY AND CONCLUSIONS

The Court of Appeals was in error in affirming the decision of the Spokane County Superior Court suppressing the results of the blood test administered to Respondent James D. Rivard after he voluntarily submitted to it. Law enforcement officers were not required to advise him of his rights under former RCW 46.20.308, the implied

---

[71]"I think they treated Mr. Rivard as if he was under arrest. But he wasn't clearly. There's no evidence before the Court that he was under arrest." Argument of Richard L. Bechtolt, Transcript of Mot. to Suppress and 3.5 Hearing at 51.

[72]*See Berkemer*, 468 U.S. at 441 ("We hold therefore that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested.") (footnote omitted).

[73]Br. of Resp't at 9.

consent statute. Implied consent warnings apply only when a person is under arrest. From the record in this case it is undisputed that Respondent was not under arrest. He was not in custody. He was free to independently arrange another blood test following the one administered by the State.

■■ In 1973 this court decided *State v. Wetherell.* After that decision the Legislature in 1975 made revisions to RCW 46.20.308.[74] If the intent of the statute was different from the interpretation given by this court in *Wetherell,* the Legislature could have amended it further in the intervening years. But the Legislature has not changed the requirement of the statute that a person must be under arrest before the implied consent warning applies.

The argument is made that Respondent did not actually consent because he was not fully advised of his rights under the implied consent statute. There is nothing in the record to indicate his consent was coerced or was otherwise involuntary. Because the implied consent warning applies only when the person is under arrest, the fact the officer did not give the warning is of no consequence because Respondent was not under arrest.

Deciding whether Respondent was under arrest when he was asked to submit to the blood test was basic to determining whether he should have been given the implied consent warnings. Although the issue was not previously raised by either Petitioner or Respondent, it is evident from the record that Respondent was not under arrest when he was asked to submit to the blood alcohol test. Arrest is a prerequisite for application of the implied consent statute, RCW 46.20.308.

We reverse the Court of Appeals, Division III, which affirmed an order of the Spokane County Superior Court suppressing the results of a blood alcohol test administered

---

[74]Amended by LAWS 1975 1st Ex. Sess. ch. 287, § 4; 1979 ch. 158, § 151; 1979, Ex. Sess. ch. 136, § 59; 1979, Ex. Sess. ch. 176, § 3; 1981 ch. 260, § 11; 1983 ch. 165, § 1; 1983 ch. 165, § 2; 1985 ch. 407, § 3; 1986 ch. 64, § 1; 1986 ch. 153, § 5; 1987 ch. 22, § 1; 1989 ch. 337, § 8; 1994 ch. 275, § 13.

to Respondent James D. Rivard following the accident in which the automobile driven by Respondent struck and fatally injured James Mecsko who was riding on a skateboard.

DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

[No. 63909-4.  En Banc.]
Argued October 23, 1996.    Decided January 16, 1997.