13 P.3d 226 (2000)
103 Wash.App. 527
STATE of Washington, Respondent,
v.
Christopher Charles AVERY, Appellant.
No. 23643-5-II.
Court of Appeals of Washington, Division 2.
November 22, 2000.
*228 Alan C. Seago, Tacoma, for Appellant.
Hugh Kirk Birgenheier, Pierce Co. Deputy Pros. Atty., Tacoma, for Respondent.
*227 SEINFELD, P.J.
Christopher Avery appeals his convictions of vehicular homicide and failure to remain at the scene of an injury accident. He challenges the trial court's denial of his motion to suppress blood test results, arguing that the police illegally drew his blood without first advising him of the "implied consent" warnings set forth in RCW 46.20.308. We find that the officers lacked reasonable grounds to believe Avery had been driving under the influence of alcohol and, therefore, the warnings were not necessary. Thus, we affirm.

FACTS[1]
In June 1997, at approximately 6 a.m., Avery's automobile drifted toward the curb of a Tacoma street and struck pedestrian Darryl Jacobson, who died as a result of his injuries. Immediately afterwards, Avery sped away from the scene.
A witness followed Avery and observed him speeding and running traffic lights. Avery eventually stopped and police officers Lowry and Larkin arrived shortly thereafter. They removed him from his vehicle and read him his Miranda[2] warnings.
Avery told the officers that he had consumed a couple of drinks at 2 a.m., that he had swerved to avoid another car, and that the other car had struck his vehicle. The officers noticed that Avery's car had a broken turn signal lens, that threads of clothing were imbedded in the broken windshield, and that the radio antenna was bent.
Both officers smelled intoxicants on Avery's breath but neither officer noticed any other signs of intoxication. They did not believe that Avery was under the influence of intoxicants or that there was probable cause to arrest him for vehicular homicide. The officers did arrest Avery for failure to remain at an injury accident.
At the police substation, Officer Skola and Sergeant Strickland, both experts in recognizing persons under the influence of intoxicants, interviewed Avery. According to their testimony, neither officer detected the odor of intoxicants. But Skola's written report notes that Avery had a faint odor of intoxicants and a slight impairment. Skola also noted that Avery's attitude was cooperative, his coordination was good, his clothes were orderly, his eyes and face were normal, and his speech was good.
Officers observed Avery falling asleep on several occasions but Avery's father told them that Avery held two jobs and was extremely tired. Both Skola and Strickland knew that the victim had died but neither officer believed that they had probable cause to arrest Avery for vehicular homicide and he was not then arrested for that offense. But Sergeant Sheehan, who was also at the substation, believed Avery was possibly intoxicated.
Strickland asked Avery if he would submit to a voluntary blood test to determine his blood alcohol level. Avery consented. The officers readvised Avery of his Miranda rights and his right to refuse the blood test. They also had him read and sign a voluntary consent form; the form did not contain the implied consent warnings. After a technician drew the blood, Avery was released.
Avery's blood sample indicated a blood alcohol level of .17g/100 mL. With this information the State charged Avery with vehicular homicide, RCW 46.61.520, and failure to remain at an injury accident, RCW 46.52.020(1).
Avery moved to suppress the results of the blood test, arguing that the officers had *229 failed to give him the implied consent warnings required under RCW 46.20.308 before taking his blood. The trial court denied the motion, finding that the implied consent statute, including the duty to provide the warnings, is not triggered unless the suspect is under arrest for an alcohol-related driving offense.

ANALYSIS
Avery argues that the trial court erred in refusing to suppress the blood test results because, under the implied consent statute, RCW 46.20.308, the arresting officers had reasonable grounds to believe he had been driving while under the influence of alcohol. Thus, he contends, the officers had the duty to inform him of his rights under that statute. Avery also contends the police impermissibly performed a blood, rather than a breath, test.
The State argues, and the trial court agreed, that the implied consent warnings were not required because Avery had not been arrested for an alcohol-related offense. The State also asserts that a suspect may voluntarily consent to testing outside the implied consent statutory scheme.

I. Implied Consent Statute RCW 46.20.308
We conduct a de novo review of the trial court's application of RCW 46.20.308. State v. Azpitarte, 140 Wash.2d 138, 140-41, 995 P.2d 31 (2000). When interpreting a statute, we strive to ascertain and give effect to the legislature's intent. State v. Sweet, 138 Wash.2d 466, 477-78, 980 P.2d 1223 (1999). If the language of the statute is unambiguous, we rely solely on the statutory language. Azpitarte, 140 Wash.2d at 142, 995 P.2d 31. See also W. Petroleum Importers, Inc. v. Friedt, 127 Wash.2d 420, 423-24, 899 P.2d 792 (1995) (noting general statutory construction rules apply to initiatives and meaning is construed as "average informed lay voter" would read language). A statute's failure to define one of its terms does not make the statute ambiguous; absent any contrary legislative intent, we give words their "plain and ordinary meaning." Ravenscroft v. Washington Water Power Co., 136 Wash.2d 911, 920-21, 969 P.2d 75 (1998).
The people adopted the implied consent statute by initiative in the 1968 general election. Subsequently, the legislature has amended it numerous times but the language at issue in this case has not changed significantly since 1968.[3] At the time of Avery's arrest in June 1997, the implied consent statute stated, in relevant part:
Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration or presence of any drug in his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503 [driving under 21 consuming alcohol].
RCW 46.20.308(1) (1996).
Thus, under the statute, a driver arrested by an officer who has reasonable grounds to believe the driver is under the influence of intoxicants is deemed to have consented to a breath or blood test to determine the driver's blood alcohol level. Medcalf v. Dep't of Licensing, 133 Wash.2d 290, 298, 944 P.2d 1014 (1997). Except under circumstances specified in RCW 46.20.308(3) that are inapplicable here, a driver may revoke that consent and refuse to take the test.
*230 RCW 46.20.308(2) requires the officer to "inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506." The officer also must warn the driver that driving privileges will be revoked if the driver refuses to take the test or if the test shows an illegal concentration of alcohol and warn the driver that the State may use refusal of the test as evidence in a criminal trial. RCW 46.20.308(2)(a), (b), and (c).[4] One of the statute's purposes is to provide the driver with the "opportunity to make a knowing and intelligent decision whether to submit to an evidentiary breath test."[5]State v. Whitman County Dist. Court, 105 Wash.2d 278, 282, 714 P.2d 1183 (1986). See also State v. Trevino, 127 Wash.2d 735, 747, 903 P.2d 447 (1995).
To trigger the implied consent statute, there must be both a valid arrest and reasonable grounds for the arresting officer to believe that the driver was driving under the influence at the time of the arrest. Thus, where the State has not yet arrested a driver, it need not give the driver the implied consent warnings and the driver may voluntarily consent to a blood or breath test. State v. Rivard, 131 Wash.2d 63, 77, 929 P.2d 413 (1997); State v. Wetherell, 82 Wash.2d 865, 869, 514 P.2d 1069 (1973).
Where the statute does apply, the test should be of the breath only unless, because of the suspect's physical condition or the lack of equipment, it is not possible to give the breath test. Further, if the officer has reasonable grounds to believe the driver was under the influence of drugs, a blood test is permissible. RCW 46.20.308(3).[6]

II. Voluntary Consent Without Warnings
The State argues, in part, that officers are not required to comply with the implied consent statute when a suspect voluntarily consents to a blood test. But as the court stated more than 20 years ago:
[C]onsent is no longer an issue in this state, since all drivers have consented in advance to testing for the presence of alcohol. The issue becomes one of deciding whether the officer complied with the statute in such a fashion as to adequately apprise the driver of his right to withdraw his consent.
State v. Krieg, 7 Wash.App. 20, 23, 497 P.2d 621 (1972).
The Washington Supreme Court has not squarely addressed whether a driver may give actual consent outside the strictures of the implied consent statute. But because the driver has already consented to a test by virtue of the implied consent statute, additional consent is irrelevant where the statute is triggered. See Krieg, 7 Wash.App. at 23, 497 P.2d 621. Further, an official request for consent without the warnings would deprive the driver of the opportunity to make an informed decision as to whether to revoke his or her consent. See Whitman County Dist. *231 Court, 105 Wash.2d at 282, 714 P.2d 1183. Considering these principles, we conclude that where the implied consent statute applies, the State cannot avoid complying with the statute by obtaining a driver's "voluntary" consent to a blood test.

III. Statute's Application to Non-Alcohol-Related Offenses
The State also argues that the implied consent statute is triggered only when a suspect is arrested for an alcohol-related offense. Under this reasoning, because Avery was arrested for failure to remain at an injury accident, a non-alcohol-related offense, the statute was not triggered. Thus, it argues that Avery was not entitled to implied consent warnings.
In describing the implied consent statute, the Washington Supreme Court has stated that a person is deemed to have consented to blood-alcohol-level tests when driving a motor vehicle under the influence of intoxicating liquor. Medcalf, 133 Wash.2d at 297, 944 P.2d 1014; Trevino, 127 Wash.2d at 746, 903 P.2d 447. But it has not squarely addressed whether a non-alcohol-related offense also triggers the implied consent warning requirement.
In a license revocation case, this court specifically noted that the arrest triggering the statute may be for "any offense." Fritts v. Dep't of Motor Vehicles, 6 Wash. App. 233, 238, 492 P.2d 558 (1971). In a 1972 negligent homicide case, Division One disagreed:
The phrase "any offense" is modified by the phrase "where ... the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor." Thus, the statutory warnings apply to any offense which has as one of its elements either (1) driving while under the influence of intoxicating liquor, or (2) being in actual physical control of a motor vehicle while under the influence of intoxicating liquor.
Krieg, 7 Wash.App. at 25, 497 P.2d 621. But in an appeal from a license revocation decision in 1986, Division One stated, without reference to Krieg, that "[t]he arrest may be for any offense, but must be a valid arrest." Williams v. Dep't of Licensing, 46 Wash. App. 453, 455, 731 P.2d 531 (1986) (citing Fritts, 6 Wash.App. at 237, 492 P.2d 558).
We agree with our earlier decision in Fritts; the implied consent statute is plain and unambiguous. We "assume the Legislature means exactly what it says." State v. Chapman, 140 Wash.2d 436, 450, 998 P.2d 282 (2000).
The statute states that any person who drives within the state is deemed to have given consent for a breath or blood test if arrested for "any offense" as long as the officer has reasonable grounds, at the time of the arrest, to believe the person was driving or in control of a vehicle while under the influence of intoxicants. RCW 46.20.308(1). A reasonable reading of the statute, which comports with the purpose of giving arrested drivers the opportunity to make knowing and intelligent decisions, is that the underlying offense may be any offensealcohol or non-alcohol related.[7]
Therefore, the crime for which a driver is arrested does not control whether the implied consent statute applies. Although Avery was arrested for the failure to remain at an injury accident, a non-alcohol-related offense, the law required implied consent warnings if the officers had reasonable grounds to believe that Avery was driving under the influence at the time of his arrest.

IV. Reasonable Grounds To Believe Driver Under Influence
Avery contends that the arresting officers had reasonable grounds to believe that he was driving while under the influence of intoxicants *232 at the time of the arrest, thereby triggering the implied consent statute and its warnings. RCW 46.20.308(1). See also State v. Rogers, 37 Wash.App. 728, 730-31, 683 P.2d 608 (1984).
In finding of fact 29, the trial court found that neither Skola nor Strickland believed Avery was under the influence of intoxicants or that there was probable cause to arrest him for vehicular homicide. But the trial court did not rule on whether the officers' belief was reasonable.
It appears that the trial court based its decision on the nature of the crime for which Avery was arrested, not on whether the officers had reasonable grounds to believe that Avery had committed an alcohol-related offense. See conclusion of law 5. As discussed above, we differ with the trial court in that we conclude the crime designated at the time of the arrest does not control the statute's applicability. Nonetheless, this court can affirm the trial court's decision to deny the suppression motion on any ground supported by the record, even if the trial court made an erroneous legal conclusion. State v. Bryant, 97 Wash.App. 479, 490-91, 983 P.2d 1181 (1999) (citing State v. Norlin, 134 Wash.2d 570, 582, 951 P.2d 1131 (1998)), review denied, 140 Wash.2d 1026 (2000).
The implied consent statute does not define "reasonable grounds," but it is clear that this requirement is "separate from the requirement of probable cause to arrest." O'Neill v. Dep't of Licensing, 62 Wash.App. 112, 116, 813 P.2d 166 (1991). Of course, observations supporting probable cause to arrest may also support a finding of reasonable grounds. See Fritts, 6 Wash.App. at 238, 492 P.2d 558.
A number of other states that have adopted similar implied consent statutes have interpreted the meaning of "reasonable grounds" under their statutes. Some of these states have expressly, or implicitly, equated reasonable grounds with probable cause. See, e.g., Leslie v. State, 711 P.2d 575, 577 (Alaska Ct.App.1986) (reasonable grounds and probable cause equivalent); State v. Braun, 495 N.W.2d 735, 738-39 (Iowa 1993) ("The reasonable grounds test is met when the facts and circumstances known to the officer at the time action was required would have warranted a prudent person's belief that an offense has been committed.").[8] But Pennsylvania courts have described "reasonable grounds" as something less than probable cause. See, e.g., Commonwealth v. Stair, 548 Pa. 596, 699 A.2d 1250, 1254 n. 6 (1997) ("The test for reasonable grounds is whether a person in the position of the police officer, viewing the facts and circumstances as they appeared at that time, could have concluded that the motorist was operating the vehicle while under the influence of alcohol.").[9] And at least one state, Montana, has *233 equated this term with the "particularized suspicion" required for an investigative stop. See Bush v. Montana Dep't of Justice, 291 Mont. 359, 968 P.2d 716, 718 (1998).[10]
In Washington, "[p]robable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." State v. Terrovona, 105 Wash.2d 632, 643, 716 P.2d 295 (1986). "The concept of probable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a man of ordinary caution to believe the accused is guilty of the indicated crime." State v. Seagull, 95 Wash.2d 898, 906, 632 P.2d 44 (1981) (emphasis added). The definition of probable cause encompasses the reasonable grounds language. Thus, based solely on the language, the probable cause standard is appropriate.
Further, in authorizing a breath or blood test, the statute is authorizing a search, which also dictates a probable cause standard. See Leslie, 711 P.2d at 577 (Alaska Court of Appeals interpreting reasonable grounds in its implied consent statute). Unlike a Terry stop, where the officer only needs a reasonable suspicion of criminal activity, the taking of a breath or blood sample is more invasive than a "stop and frisk" search. For a so-called Terry or investigative stop, the officer only needs to have specific and articulable facts which lead to a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.E.2d 889 (1968). See also State v. Thompson, 93 Wash.2d 838, 840-41, 613 P.2d 525 (1980). Thus, we conclude that the more stringent probable cause standard applies here.
Applying this test, we ask whether, at the time of Avery's arrest, the facts and circumstances known to the arresting officers were sufficient to cause a reasonably prudent officer to believe that Avery had been driving under the influence. We examine those facts and circumstances "in the light of the arresting officer's special experience, and ... the standard should be, not what might appear to be [reasonable grounds] to a passerby, but what would be [reasonable grounds] to a reasonable, cautious, and prudent officer." State v. Todd, 78 Wash.2d 362, 367, 474 P.2d 542 (1970).
Following the suppression hearing, the trial court entered 43 findings of fact pursuant to CrR 3.6. Avery has not specifically assigned error to any of the findings. We treat unchallenged findings entered following a suppression hearing as verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
In finding of fact 18, the trial court found that the arresting officers did not believe that Avery was under the influence. In finding of fact 29, the court found that two other officers, Skola and Strickland, were experts in the field of recognizing persons under the influence and that neither believed Avery was under the influence of intoxicants. The trial court also had the opportunity to judge the credibility of the four officers who interacted with Avery; this court will not disturb such credibility determinations on appeal. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
The court's other findings contain few indicia of possible intoxication. There was a faint odor of alcohol on Avery's breath; he seemed very tired, but this was explained by his work schedule. Avery's coordination was good, he was cooperative, his speech was good, and his eyes and face appeared normal. Although Skola's written report indicated a "slight impairment," this was contradicted by his other observations. And Sheehan, who thought that Avery might have been intoxicated, was neither the arresting officer nor *234 the officer supervising the testing. Thus, his observations are not controlling.
Overall, the evidence supports the unchallenged findings. These findings support a conclusion that at the time of the blood test neither the arresting officer nor the officers administering the test had reasonable grounds to believe Avery had been driving while under the influence. Thus, the implied consent statute did not apply. See State v. Rivard, 131 Wash.2d 63, 76-77, 929 P.2d 413 (1997) (holding that officers not required to give implied consent warnings where statute did not apply).

V. Use of Blood Test
Because the implied consent statute did not apply here, Avery's remaining argument that the police improperly administered a blood, rather than a breath, test must fail.
Although the implied consent statute provided that the test shall be by breath only in this situation, RCW 46.20.308(3), where the implied consent statute does not apply, the suspect may voluntarily consent to a blood test. See Rivard, 131 Wash.2d at 76-77, 929 P.2d 413; State v. Wetherell 82 Wash.2d 865, 869, 514 P.2d 1069 (1973). Here, Avery did exactly that.
Thus, we affirm.
HOUGHTON, J., and FOSCUE, J.P.T., concur.
NOTES
[1] We derive these facts from the unchallenged findings that the trial court entered following the suppression hearing.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The implied consent law, Initiative No. 242, stated in part, at the time of its passage:

(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of section 3 of this initiative, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.
Laws of 1969, ch. 1, § 1.
[4] The Washington Supreme Court has noted that the warning requirements affording the driver an opportunity to make an informed decision are statutorily granted and do not have a constitutional basis. Gonzales v. Dep't of Licensing, 112 Wash.2d 890, 896, 774 P.2d 1187 (1989). In other words, there is "`no constitutional right to refuse to take a breathalyzer test.'" State v. Whitman County Dist. Court, 105 Wash.2d 278, 283, 714 P.2d 1183 (1986) (quoting State v. Krieg, 7 Wash.App. 20, 23, 497 P.2d 621 (1972)).
[5] Other purposes of the statute are: "(1) to discourage individuals from driving motor vehicles while under the influence of alcohol or drugs; (2) to remove the driving privileges of those individuals who are disposed to driving while intoxicated; and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication." Medcalf, 133 Wash.2d at 297, 944 P.2d 1014.
[6] There are also certain offenses where the test may be of either breath or blood and consent may not be withdrawn. See RCW 46.20 .308(3):

Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.
[7] The State cites Rivard and Wetherell, but they are not helpful. In those cases, the Washington Supreme Court merely reiterates that there must be a valid arrest to trigger the statute and if the suspect is not under arrest, she or he must have voluntarily consented to the testing. Rivard, 131 Wash.2d at 77, 929 P.2d 413; Wetherell, 82 Wash.2d at 869, 514 P.2d 1069. And, in State v. Entzel, 116 Wash.2d 435, 441-42, 805 P.2d 228 (1991), where the arresting officer chose not to ask an arrested driver to submit to a breath test because of the driver's uncooperative attitude, the court held that the implied consent statute neither requires the State to seek a breath or blood test with every DWI suspect nor to inform the arrested driver of his right to arrange a test.
[8] Alaska's implied consent statute provides in part:

A person who operates or drives a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath ... if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle ... while intoxicated. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable grounds to believe that the person was operating or driving a motor vehicle ... while intoxicated.
Leslie, 711 P.2d at 577 (emphasis omitted) (quoting ALASKA STAT. § 28.35.031(a)). Iowa's statute provides:
A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 [driving while under the influence] is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens.... Withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2, and if any of the following conditions exist....
Braun, 495 N.W.2d at 738 (quoting IOWA CODE § 321J.6 (1)).
[9] Pennsylvania's implied consent statute states:

Any person who drives ... a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine ... if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of ... a motor vehicle ... while under the influence[.]
Stair, 699 A.2d at 1252 n. 1 (quoting 75 PA. CONS. STAT. § 1547(a)).
[10] Montana's statute states:

A person who operates ... a vehicle [in] this state ... is considered to have given consent... to a test or tests of the person's blood, breath, or urine.... The test or tests must be administered at the direction of a peace officer who has reasonable grounds to believe that the person has been driving ... while under the influence[.]
Bauer v. State, 275 Mont. 119, 910 P.2d 886, 888 (1996) (quoting MONT.CODE ANN. § 61-8-402).